IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00542-REB-KLM

RICHARD PERKINS, individually, and
RICHARD MILLER, individually,

      Plaintiffs,

v.

FEDERAL FRUIT & PRODUCE COMPANY, INC., a Colorado corporation, and
MICHAEL MARTELLI, individually,

      Defendants.

TEAMSTERS LOCAL UNION NO. 455,

      Interested Party.
_____

**ORDER GRANTING MOTION TO COMPEL**
_____

This matter is before the Court on Defendants' **Motion to Compel Responses to Defendants' Requests for Production Pursuant to Defendants' Subpoena Duces Tecum** [Docket No. 42; Filed November 4, 2011] (the "Motion").  The Court held a hearing on the Motion on November 18, 2011, and subsequently invited Defendants and the subpoenaed non-party, International Brotherhood of Teamsters, Local No. 455 (the "Union") to submit briefing in support of their respective positions.  I have reviewed **Defendants' Brief in Support of Motion to Compel Pursuant to Order of the Court Dated November 18, 2011** [Docket No. 52; Filed December 5, 2011] and **Non-Party Teamsters Local Union No. 455's Supplemental Brief in Response to Defendants' Motion to Compel Pursuant to Defendant's Subpoena Duces Tecum and Teamsters'**

1

**Request for an Order of Protection** [Docket No. 53; Filed December 5, 2011] and am fully advised in the premises. For the reasons set forth below, the Motion is **GRANTED**.

## I. Background

Plaintiffs Richard Perkins and Richard Miller were employed as delivery truck drivers by Defendant Federal Fruit & Produce Co., Inc. ("Federal Fruit") until their employment was terminated. [#21] at 2-6. Both were members of the non-party Union, which filed a charge with the National Labor Relations Board ("NLRB") relating, in part, to termination of their employment. [#52] at 2. Both Plaintiffs also pursued charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") through private counsel. *Id.* at 3. Eventually the Union withdrew the portions of the NLRB charge relating to alleged discrimination against Plaintiffs, and Plaintiffs entered into "Settlement Agreements" with Federal Fruit and the Union. *Id.* at 3, 5. Subsequently, Plaintiffs filed the instant lawsuit alleging claims based on discrimination and retaliation. [#7] at 1-23.

In response to Requests for Production in the instant action, Plaintiffs produced copies of emails and a letter between their former counsel ("Greisen") and counsel for the Union ("Cote"), as well as emails between Cote and an NLRB attorney ("Saveland"), and emails between Cote and the Union business agent ("Medina"). The documents produced generally discuss partial resolution of the NLRB charge by withdrawal of the Union grievances relating to Plaintiffs' discrimination allegations. *See* [##52-5, 52-6, 52-7, 52-8, 52-9, 52-10, 52-13].

On July 20, 2011, Federal Fruit served a subpoena duces tecum on the Union, seeking documents relating to Plaintiffs. [#42-2]. In response, the Union produced some

documents and a privilege log. [#42-5]. The Union refused to produce several emails dated during the time frame in which the Union was pursuing the NLRB charge, contending that the emails are protected by work product qualified immunity. The Motion at issue followed.

## II. Analysis

**A.    The Disputed Documents Are "Work Product" and Subject to the Work Product Qualified Privilege.**

As stated in Fed. R. Civ. P. 26(b)(3)(B), the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" are protected from disclosure to opposing parties in discovery. However, such work product may be discovered if it is relevant to any party's claim or defense and if that party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

In its Brief, the Union takes the position that the Court concluded, during the hearing on the Motion, that the emails in dispute constitute work product. [#53] at 4. However, the only matter resolved at the hearing was that Federal Fruit conceded that the emails were prepared in anticipation of litigation. [#55] at 19-20.

Federal Fruit argues in its Brief that the emails do not constitute work product for a number of reasons. First, Federal Fruit asserts that the emails "do not touch on mutually relevant legal analysis or discussions. They are more fairly characterized as requests for status updates and for the divvying up of the claims each party was and was not hoping to pursue." [#52] at 8. Second, Federal Fruit asserts that the emails were not created in

anticipation of the litigation then contemplated. *Id.* at 8-9. As indicated above, however, counsel conceded this point during the hearing. Third, Federal Fruit asserts that the emails were not treated as confidential by the Union. *Id.* at 9. As the Court stated during the hearing, whether or not the Union treated the emails as confidential does not relate to whether the emails constitute work product pursuant to law; instead, it relates to whether any work product privilege was waived. *See generally Chevron Corp. v. Stratus Consulting, Inc.,* No. 10-cv-00047-MSK-MEH, 2010 WL 3923092, at *9 (D. Colo. Oct. 1, 2010) (unpublished decision). Hence, for purposes of determining whether the emails constitute "work product," the Court considers Federal Fruit's first argument only. The Union's Brief does not directly address the issue of whether the emails constitute work product.

Based on a thorough review of the emails previously disclosed to Federal Fruit and the Union's privilege log [#42-5], the Court is satisfied that the undisclosed emails referenced on the Union's privilege log are protected by the work product qualified privilege. The emails are communications between attorneys or between attorneys and the Union's business agent. *Id.* The work product doctrine is "broader than and distinct from the attorney-client privilege." *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999). Attorneys' mental impressions are broadly protected in order to further "society's interest in protecting the adversary system by shielding litigants' work-product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). The Court finds no support for Federal Fruit's contention that the emails must "touch on mutually relevant legal analysis or discussions," [#52] at 8, in order to constitute protected work product. Indeed, so long

as the emails contain an attorney's "mental impressions, conclusions, opinions or legal theories," they are protected. Fed. R. Civ. P. 26(b)(3)(A); *AAA Nat'l Maint. v. City and Cnty. of Denver*, No. 09-cv-00007-REB-MEH, 2009 WL 3233710, at *2 (D. Colo. Oct. 7, 2009) (unpublished decision).

The previously-disclosed email communications between the Union's attorney, Plaintiffs' former attorney and the Union's business agent contain counsels' mental impressions, conclusions and opinions about settlement of the Union grievances. As such, they are protected work product. Based on the description of the withheld emails in the Union's privilege log, it is apparent that they constitute work product as well. [#42-5] at 5-8, 10.

In general, the emails sought by Federal Fruit fall into two categories: those between counsel for the Union and the Union's business agent, [#42-5] at 15a, 15b, 43a, 43b, 45a, 45b, and 46a, and those between various counsel [#42-5] at 15d, 15e, 15f, 15g, 15h, 15i, 18a, 19a, 26a, 26b, 28a, 28b, 28c, 28d, 29a, 29b, 29c, 29d, 29e, 29f, 46b, 46c, 46d, 46e, 46f, 46g, and 46h. The Court addresses each category below in turn.

**B.     The Union Waived Its Work Product Qualified Privilege As To Communications Between the Union's Attorneys and Its Business Agent.**

**(1)     The Common Interest Doctrine**

The parties agree that exchange of work product between parties with a common interest does not waive the qualified privilege. [#52] at 10; [#53] at 4-5; *Gottlieb v. Wiles*, 143 F.R.D. 241 (D. Colo. 1992). They disagree, however, on whether the parties to whom the documents were disclosed had a "common interest."

The work product information contained in emails between Union counsel and the Union business agent was disclosed twice: first by Union counsel to her client, Medina, and second by an unknown person to Plaintiffs. As stated by Federal Fruit, "[a]lthough the specific source of the disclosed documents has not been confirmed by the Union or by Cote, there is no reason to believe that anyone other than Medina voluntarily disclosed the documents to Plaintiffs, who then produced the documents [to Federal Fruit] in discovery . . . ." [#52] at 14. Hence, the Court must address whether either the first or second disclosure waived the work product qualified privilege.

As to the disclosure of the work product by Union counsel to their client, the Union representative, neither party argues that the common interest doctrine applies. However, it is obvious that Union counsel shared a "common interest" with the Union's representative, the Union business agent, such that disclosure of attorney work product to him did not waive the qualified privilege.[1] Hence, the Court rejects the notion that the Union waived its work product privilege due to a lack of a common interest between its counsel and its business agent.

**(2)     Waiver of the Work Product Qualified Privilege**

However, the Union attorneys' work product was also disclosed a second time, by transmission of the documents to Plaintiffs through unknown means (as well as a third time,

---

[1] The "common interest" doctrine "is merely an extension of the attorney-client privilege and the work-product doctrine;" thus, the "common interest" doctrine logically preserves the confidentiality of communications exchanged between a client (the Union business agent) and its counsel (Union counsel) that are protected by attorney-client privilege. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 578-79 (D. Colo. 2007); *see also Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 218-19 (W.D.Ky. 2006) (attorney-client privilege "extends to communications among corporate employees that reflect legal advice rendered by counsel to the corporation") (citation omitted).

by production of the documents by Plaintiffs to Federal Fruit. Because the final transmission involves no assertion of privilege by any party, the Court does not address it). Hence, the issue is whether disclosure of Union attorney work product to Plaintiffs waived the qualified privilege as to such work product.

First, the Court agrees with Federal Fruit that the Union and *Plaintiffs* did not have a "common interest" recognized by law, and therefore the common interest doctrine does not shield against waiver of the qualified work product privilege. The Tenth Circuit Court of Appeals has narrowly construed the common interest doctrine to apply when "different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. . . .The key consideration is that the nature of the interest be identical, not similar." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998) (citations and internal quotations omitted); *see also Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc.*, No. 2:09cv221, 2011 WL 2881913, at *4 (D. Utah July 15, 2011) (unpublished decision). Although the Union and the Plaintiffs may have had similar interests here, their interests were not identical. The disclosed emails confirm that the Union's interest was in prosecuting all or part of its NLRB charge, some of which related to Plaintiffs and some of which did not. *See* [##52-1; 52-8; 52-10]. The Plaintiffs' interest was in prosecution of that portion of the NLRB charge that related to them, as well as in pursuit of their claims for discrimination and retaliation, to the extent that those claims were not resolved by the Union. *See* [##52-2; 52-5; 52-6; 52-8; 52-9; 52-10].

Second, in the absence of a common interest, the Court finds that the qualified work product privilege was waived by disclosure of the emails to Plaintiffs. "The protection

7

provided by the work product doctrine is not absolute, and it may be waived." *In re Qwest Commc'ns Int'l Inc.,* 450 F.3d 1179, 1186 (10th Cir. 2006) (citation omitted). Indeed, the work product qualified privilege "may be waived by the voluntary release of materials otherwise protected by it." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (quoting *e.g., Simmons, Inc. v. Bomardier, Inc.,* 221 F.R.D. 4, 8 (D.D.C. 2004)). Regardless of how the emails came into Plaintiffs' possession, no party has asserted that disclosure of them to Plaintiffs was involuntary. Under these circumstances, the work product qualified privilege has been waived, and the emails between the Union's attorneys and its business agent must be produced to Federal Fruit.

**C. The Union Waived Its Work Product Qualified Privilege As To Communications Between the Union's Attorney, Griesen and/or Saveland.**

The parties also dispute the applicability of the "common interest" doctrine to the emails between counsel. Federal Fruit asserts that there was no "common interest" between counsel for the Union and either Plaintiffs' former counsel or counsel for the NLRB. [#52] at 10-13. The Union contends that it shared a common interest in the discrimination grievances with Plaintiffs' former counsel, and a common interest in violations of the National Labor Relations Act with the NLRB attorney. [#53] at 6. However, as explained above, the common interest doctrine is narrowly construed by the Court, and requires more than mere similarity of interests between the parties in order to apply to work product disclosures. During the time frame of the contested emails, the Union was pursuing grievances on behalf of Plaintiffs and other Union members, as well as pursuing the NLRB charge. *See* [#52-1, 52-3, 52-11]. Plaintiffs were pursuing discrimination and retaliation charges with the EEOC. One of the disclosed emails makes clear where the

Plaintiffs' and the Union's attorneys' interests diverged. The Union attorney wrote to Medina: "While the Company's [settlement] proposal goes a long way towards making Perkins whole, it does NOTHING to advance the Union's interests, or increase its profile with its Members, or at the Company." [#52-6] (emphasis in original). Undoubtedly, therefore, the Union attorney's interest in resolving Plaintiffs' grievances extended also to increasing the Union's profile within Federal Fruit and among Union members. There is no evidence to suggest that Plaintiffs' former attorney shared these interests.

Likewise, there is no evidence to suggest that the Union attorney and the NLRB attorney shared identical interests here. At its most broad, the Union attorney's interest was in prosecuting the grievances filed on behalf of Union members toward a goal of ending alleged unfair labor practices. On the other hand, "the primary function and responsibility of the [NLRB is] to resolve the conflicting interests that Congress has recognized in its labor legislation." *N.L.R.B. v. Ins. Agents' Int'l Union, AFL-CIO*, 361 U.S. 477, 499 (1960). Although the general goal of ending alleged unfair labor practices is undoubtedly shared by unions and the NLRB, the interests of the two entities in these circumstances were not identical. The Union wanted to prove that Federal Fruit engaged in such practices; the NLRB was empowered to decide whether it had or had not. Without more specific proof of a closer alignment of interests, the Court cannot find the requisite "common interest" to shield against waiver of the qualified attorney work product privilege.[2]

---

[2] The parties do not address the burden of proof to establish the existence of a "common interest" pursuant to law. Generally, the party seeking to prevent the disclosure of documents has the burden of establishing that the documents qualify as work product. *Metro Wastewater Reclamation Dist. v. Continental Cas. Co.,* 142 F.R.D. 471, 477 (D. Colo. 1992). Thus, the Court assumes, without deciding, that the Union bears the burden of proving that the common interest doctrine precludes waiver of the attorney work product qualified privilege.

### III. Conclusion

For the reasons set forth above, IT IS HEREBY **ORDERED** that the Motion to Compel Responses to Defendants' Requests for Production Pursuant to Defendants' Subpoena Duces Tecum [#42] is **GRANTED.** The Union shall produce the withheld emails **on or before January 6, 2012.** The parties shall confer regarding the need to reopen discovery in light of this Order. Any disputes relating to the reopening of discovery shall be brought to the Court's attention by telephone. The parties shall initiate a conference call and then, once all parties are on the line, dial the Court at **303-335-2770**.

Dated: December 30, 2011

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge