**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00542-REB-KLM

RICHARD PERKINS, individually, and
RICHARD MILLER, individually,

      Plaintiffs,

v.

FEDERAL FRUIT & PRODUCE COMPANY, INC., a Colorado corporation, and
MICHAEL MARTELLI, individually,

      Defendants.

**ORDER ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**Blackburn, J.**

      This matter is before me on the **Defendants' Motion for Partial Judgment on the Pleadings** [#15][1] filed April 19, 2011. The plaintiffs filed a response [#24], and the defendants filed a reply [#25]. In addition, the plaintiffs filed a notice of supplemental authority [#40], and the defendants filed a corresponding response [#41]. I grant the motion in part and deny it in part.

**I. JURISDICTION**

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental).

**II. STANDARD OF REVIEW**

      A motion for judgment on the pleadings is evaluated under the same standard as

---

[1] "[#15]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6). *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n. 2 (10th Cir. 2002). When ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of FED. R. CIV. P. 8(a). For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court of the United States supplanted the standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Under *Twombly*, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming*, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of

a cause of action" will not be sufficient to defeat a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, – , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted).  **See also Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949.  **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965).  The standard will not be met when the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." **Id.**

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." **Iqbal**, 129 S.Ct. at 1950; **see also Kansas Penn Gaming**, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. PLAINTIFF'S ALLEGATIONS & CLAIMS

The operative complaint is the plaintiffs' **Amended Complaint and Jury Demand** [#7] filed March 24, 2011 (Complaint). I will cite to the Complaint by paragraph number (¶ 1). The plaintiffs allege that they were employed by defendants, Federal Fruit & Produce Company, Inc., and Michael Martelli. ¶¶ 9, 35. According to the Complaint, Mr. Martelli is a "Federal Fruit Owner/Employer" or is "one of Federal Fruit's owners." ¶¶ 14, 61.

Plaintiff, Richard Perkins, is African American. Mr. Perkins alleges that he suffered disparate treatment and a hostile work environment while working for Federal Fruit, and that this treatment was motivated by Mr. Perkins' race. According to Mr. Perkins, Mr. Martelli referred to Mr. Perkins using a racial epithet on several occasions. ¶¶ 14, 15, 36, 41. Mr. Perkins complained to his supervisor, Angel Mondragon, about Mr. Martelli's discriminatory comments and harassing behavior. ¶ 16. Mr. Mondragon told Mr. Perkins that he, Mondragon, had a conversation with the owners, and they said "We will run the operation as we please and nobody will tell us otherwise." *Id.* Following this complaint, Mr. Perkins alleges, he was subjected to baseless employment actions that placed him at a material disadvantage in comparison to other Federal Fruit employees. ¶¶ 17 - 34. Mr. Perkins details in the Complaint the alleged continuing harassment and disparate treatment. His employment was terminated on May 12,

4

2009.

Plaintiff, Richard Miller, was employed by Federal Fruit and worked with Mr. Perkins. In early 2009, Mr. Miller began to assist Mr. Perkins by gathering information from employees about alleged, differential treatment of Federal Fruit employees based on their race. ¶ 36. When Federal Fruit supervisors became aware that Mr. Miller was supportive of Mr. Perkins in Mr. Perkins' complaints about differential treatment based on race, the supervisors began to retaliate against Mr. Miller. ¶ 37. Mr. Miller describes in the Complaint various actions allegedly taken against him in retaliation for his support of Mr. Perkins' complaints about race discrimination. ¶¶ 35 - 47.

The plaintiffs assert seven claims in the Complaint: (1) Mr. Perkins race discrimination claim under 42 U.S.C. § 1981; (2) Mr. Perkins' Title VII claim alleging disparate treatment and hostile work environment, based on race; (3) Mr. Perkins' and Mr. Miller's Title VII claim alleging retaliation by the defendants in response to the plaintiffs' protected opposition to unlawful employment practices; and (4) Mr. Perkins' and Mr. Miller's claim of intentional interference with prospective business advantage; (5) Mr. Perkins' and Mr. Miller's outrageous conduct claim; (6) Mr. Perkins' and Mr. Miller's intentional infliction of emotional distress claim; and (7) Mr. Perkins' and Mr. Miller's wrongful constructive discharge claim.

### IV. ANALYSIS

#### A. Title VII - Exhaustion of Administrative Remedies

In the Tenth Circuit exhaustion of administrative remedies is a jurisdictional prerequisite to a suit under Title VII. ***Shikles v. Spring/United Management Co.***, 426 F.3d 1304, 1317 (10th Cir. 2005). Under Title VII, administrative remedies may be

exhausted by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Verification of an EEOC charge is required. 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.") The plaintiffs, as the parties seeking to invoke the jurisdiction of the court, have the burden to show that they exhausted their administrative remedies. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

The defendants note that the EEOC charges filed by the plaintiffs were signed and verified by their counsel, but were not verified by the plaintiffs. *Motion to dismiss* [#15], Exhibits A and B. Because the plaintiffs' EEOC charges are not verified, as required, the defendants assert that the plaintiffs have not exhausted their administrative remedies and that, thus, their Title VII claims must be dismissed for lack of jurisdiction. In this case, the EEOC proceeded with an investigation of the plaintiffs' charges, even though they were not verified and ultimately issued a notice of right to sue letter to both plaintiffs. Federal Fruit participated in the EEOC investigation.

Courts of appeal addressing similar circumstances have reached different conclusions about whether an unverified EEOC charge constitutes a failure to exhaust administrative remedies. The united States Court of Appeals for the Third Circuit held that the verification requirement, "like the statute's time limit for filing a charge with the EEOC, should be subject to waiver when equity so requires." *Buck v. Hampton Township Sch. Dist.*, 452 F.3d 156, 263 (3rd Cir. 2006). The *Buck* court noted the holding of the United States Supreme Court in *Zipes v. Trans World Airlines, Inc*. In *Zipes*, the Court held that Title VII's mandatory time limit for filing an EEOC charge is

6

"not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires." 455 U.S. 385, 398 (1982). In *Zipes* the Court noted that the "provision granting district courts jurisdiction under Title VII, 42 U.S.C. §§ 2000e-5(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC." *Id.* at 393. Rather, the Court noted, the timely filing provision "appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 394. The *Buck* court concluded that the same analysis is applicable to the requirement that an EEOC charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b); *Buck*, 452 F.3d 262 - 263. The Fifth Circuit reached a similar conclusion in *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 77 - 79 (5th Cir. 1982).

On the other hand, the Fourth Circuit and the Eleventh Circuit have held that verification of an EEOC charge is mandatory prerequisite to the validity of the charge, and that a verified charge is a jurisdictional prerequisite. *Balazs v. Liebenthal*, 32 F.3d 151, 156 - 158 (4th Cir. 1994); *Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir. 2001).

Absent Tenth Circuit authority directly on point, I conclude that verification by the plaintiffs of their EEOC charges is not, under the circumstances of this case, a jurisdictional prerequisite to their Title VII claims in this case. The statutory requirement that an EEOC charge be filed within a certain time is tied to the requirement that a Title VII plaintiff exhaust his or her administrative remedies. However, satisfaction of the timely filing requirement is not a jurisdictional prerequisite to a Title VII suit. *Zipes*, 455 U.S. at 393. The verification requirement is directly analogous to the timely filing

requirement and is not a jurisdictional prerequisite to a Title VII suit.

In this case, the EEOC, and Federal Fruit participated in the investigation of the plaintiffs' EEOC charges. No objection to the lack of verification was raised during the EEOC investigation. As in **Buck**, I conclude that these circumstances amount to a forfeiture by the EEOC and Federal Fruit to enforce the verification requirement.

### B. Title VII Claim Against Michael Martelli

The defendants argue that the plaintiffs' Title VII claim against Mr. Martelli must be dismissed because individual capacity suits are not proper under Title VII. Assuming the allegations in the Complaint to be true, Mr. Martelli is an owner or part owner of Federal Fruit. ¶¶ 14, 61. As such, Mr. Martelli was not the employer of the plaintiffs, for the purposes of Title VII. Given these circumstances, the plaintiffs may not assert an individual capacity suit against Mr. Martelli under Title VII. **Haynes v. Williams**, 88 F.3d 898, 899 (C.A.10 (10th Cir.1996). Thus, the Title VII claim against Mr. Martelli must be dismissed.

### C. § 1981 Claim Against Michael Martelli

The defendants argue also that the plaintiffs' allegations do not state a § 1981 claim against Mr. Martelli. "A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." **Allen v. Denver Pub. Sch. Bd.**, 928 F.2d 978, 983 (10th Cir. 1991), **overruled on otr. grounds, Kendrick v. Penske Transp. Servs., Inc.**, 220 F.3d 1220, 1228 (10th Cir. 2000). "There must be some affirmative link to causally connect the actor with the discriminatory action." *Id*. According to the defendants, the allegations in the plaintiffs' complaint do not draw any causal connection between Mr. Martelli and the alleged discriminatory actions. I

disagree. The allegations in the Complaint describe Mr. Martelli as a part owner of Federal Fruit and as a person who was involved in the day to day operation and supervision of Federal Fruit's trucking operations in which the plaintiffs were employed. Further, the plaintiffs describe in sufficient detail Mr. Martelli's alleged racist comments to the plaintiffs and others, as well as circumstances that indicate that Mr. Martelli was connected with the adverse employment actions taken against the plaintiffs. This is sufficient.

### D. Plaintiffs' Seventh Claim for Relief

The plaintiffs' seventh claim for relief is captioned as a "Wrongful Constructive Discharge Claim." *Complaint*, p. 21. In this claim the plaintiffs allege that they were discharged for "exercising their right to oppose Federal Fruits' unlawful race discrimination practices." ¶ 98. Mr. Perkins alleges he was discharged because he is African American, "which is a protected class under Title VII and Section 1981." ¶ 99.

In their response [#24], the plaintiffs indicate that their seventh claim for relief is intended to address, in part, alleged retaliation for grievances the plaintiffs filed with their union. The plaintiffs' employment with Federal Fruit was controlled by a collective bargaining agreement with the Teamsters union. To the extent the plaintiffs allege retaliation for their filing of grievances with the union, this claim must be dismissed. Filing grievances under a collective bargaining agreement constitutes protected union activity under § 7 of the National Labor Relations Act. **NLRB v. U.S. Postal Service**, 906 F.2d 482, 486 (10th Cir. 1990). Generally, federal courts do not have jurisdiction over suits directly involving activity subject to § 7 of the National Labor Relations Act. Rather, the court must defer to the national Labor Relations Board. **San Diego Bldg.**

***Trades Council, Millmen's Union, Local 2020 v. Garmon***, 359 U.S. 236, 244-245 (1959). To the extent the plaintiffs' seventh claim for relief can be read to allege retaliation in response to grievances filed with their union, this claim must be dismissed.

The complaint indicates also that Mr. Perkins and Mr. Miller both complained about race discrimination directly to management, and the plaintiffs allege that these complaints motivated the defendants to retaliate against them. Union grievances aside, this aspect of the plaintiffs' seventh claim for relief states an colorable claim under Title VII and § 1981. However, these retaliation claims are alleged as part of the Mr. Perkins' first claim for relief, his § 1981 claim, and Mr. Perkins and Mr. Miller's Title VII retaliation claim, the third claim for relief. These aspects of the plaintiffs' retaliation claims need not be included duplicatively in the seventh claim for relief.

In the seventh claim for relief, Mr. Miller alleges he was constructively discharged by Federal Fruit. According to Mr. Miller, he was terminated on July 10, 2009, and then filed a union grievance challenging his termination. ¶¶ 43 - 45. After the grievance was resolved, Mr. Miller returned to work at Federal Fruit. After Mr. Miller's return, Mr. Martelli allegedly continued his campaign of retaliation. Mr. Miller says the campaign was "so fraught with abuse and ridicule that it forced Mr. Miller to resign." ¶ 47. While evidence of these events may be relevant to other claims, Mr. Miller may not assert his alleged constructive discharge as an adverse employment action in support of his Title VII claims. This is so because Mr. Miller's EEOC charge did not address the alleged constructive discharge, and he did not file a separate EEOC charge concerning the discrete incident of constructive discharge. Absent exhaustion of administrative remedies on this issue, Mr. Miller's alleged constructive discharge may not be used to

demonstrate adverse employment action in support of a Title VII claim.

The only allegation in the seventh claim for relief that is not yet resolved is Mr. Perkins' allegation that he was discharged because he is African American, "which is a protected class under Title VII and Section 1981." ¶ 99. The first claim for relief is a race discrimination claim under § 1981, and there is no reason to reassert that claim duplicatively in the seventh claim for relief. Mr. Perkins' allegation that he was discharged based on his race, in violation of Title VII, is the only viable claim stated in the seventh claim for relief. The other claims asserted in the seventh claim for relief must be dismissed.

### E. Intentional Interference with Prospective Business Advantage

The defendants argue that the plaintiffs' allegations are not sufficient to state a claim for intentional interference with prospective business advantage. To establish a claim for tortious interference with prospective business relations under Colorado law, a plaintiff must show intentional and improper interference with another's prospective contractual relation. ***Dolton v. Capitol Federal Sav. and Loan Ass'n***, 642 P.2d 21, 23 (Colo.App.1981). Intentional and improper interference preventing the formation of a contract is sufficient. *Id*. The defendants argue that the plaintiffs have not alleged that a sufficient prospective relationship existed or that the defendants' intentional or improper interference caused a third party not to enter into a contract.

The plaintiffs allege that the defendants knew that the plaintiffs were applying to other prospective employers after the plaintiffs' employment with Federal Fruit was terminated. ¶ 80. Numerous prospective employers of the plaintiffs contacted Federal Fruit for references and work history. *Id*. The defendants improperly and intentionally

11

interfered with the plaintiffs' prospective employment "by voicing negative and false remarks about the Plaintiffs." ¶ 81. The defendants actions "led to numerous employment rejections from prospective employers." ¶ 82. These allegations are sufficient to state a claim for intentional interference with prospective business advantage.

### F. Outrageous Conduct and Intentional Infliction of Emotional Distress

In their fifth claim for relief, the plaintiffs assert a claim for outrageous conduct. In their sixth claim for relief, the plaintiffs assert a claim for intentional infliction of emotional distress. Under Colorado law, outrageous conduct and intentional infliction of emotional distress are two different names for the same claim. ***Atsepoyi v. Tandy Corp.***, 51 F.Supp.2d 1120, 1125 (D.Colo. 1999). Outrageous conduct is an updated term for intentional infliction of emotional distress. *Id*. The defendants argue that the plaintiffs allege no basis for an outrageous conduct claim. An outrageous conduct claim can be based on invidious discrimination and denigrating behavior by an employer, particularly when the behavior leads to the termination of the plaintiff-employee. *Id*. The plaintiffs' allegations are sufficient to state an outrageous conduct claim. However, their duplicative intentional infliction of emotional distress claim must be dismissed.

### V. CONCLUSION AND ORDERS

Under FED. R. CIV. P. 8 and 12(c), the allegations in the plaintiffs' Complaint are not sufficient to state a claim under Title VII against Michael Martelli. The allegations in the plaintiffs' seventh claim for relief do not state a claim on which relief may be granted, except to the extent Mr. Perkins alleges in that he was terminated based on his race, in violation of Title VII. The plaintiffs' sixth claim for relief is duplicative of the plaintiffs' fifth

claim for relief, a claim for outrageous conduct. In this context, the plaintiffs' sixth claim for relief must be dismissed for failure to state a claim on which relief may be granted. To this extent, the defendants' motion to dismiss is granted. Otherwise, the defendants' motion to dismiss is denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Motion for Partial Judgment on the Pleadings** [#15] filed April 19, 2011, is **GRANTED** consistent with the foregoing findings and conclusions and the following orders;

2. That under F$_{ED}$. R. C$_{IV}$. P. 12(c), the plaintiffs' Title VII claim against defendant Michael Martelli, part of the plaintiffs' second claim for relief, is **DISMISSED**;

3. That under F$_{ED}$. R. C$_{IV}$. P. 12(c), the plaintiffs' seventh claim for relief is **DISMISSED**, except for the claim of plaintiff, Richard Perkins, that he was terminated based on his race in violation of Title VII;

4. That under F$_{ED}$. R. C$_{IV}$. P. 12(c), the plaintiffs' sixth claim for relief for intentional infliction of emotional distress is **DISMISSED**;

5. That otherwise, the **Defendants' Motion for Partial Judgment on the Pleadings** [#15] filed April 19, 2011, is **DENIED**.

Dated March 22, 2012, at Denver, Colorado.

                                                          **BY THE COURT:**

                                                          */s/ Robert E. Blackburn*
                                                          Robert E. Blackburn
                                                          United States District Judge