### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 11-cv-00542-REB-KLM

RICHARD PERKINS, individually, and
RICHARD MILLER, individually,

      Plaintiffs,

v.

FEDERAL FRUIT & PRODUCE COMPANY, INC., a Colorado corporation, and
MICHAEL MARTELLI, individually,

      Defendants.

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

      This matter is before me on the **Defendants' Motion for Summary Judgment** [#57][1] filed January 9, 2012. The plaintiff filed a response [#71] and the defendant filed a reply [#73]. I grant the motion in part and deny it in part.

### I. JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

      Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[2]   FED. R. CIV. P. 56(c);

---

[1]   "[#57]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2]   The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A movant who bears the burden of proof at trial must submit evidence to establish every essential element of its claim. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). Once the motion has been supported properly, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).

### III.  BACKGROUND

The plaintiffs, Richard Perkins and Richard Miller, were employees of defendant, Federal Fruit & Produce Company, Inc. Richard Perkins is African American. Mr. Perkins alleges that he suffered disparate treatment and a hostile work environment while working for Federal Fruit and that this treatment was motivated by his race. Mr. Perkins details in the Complaint the alleged continuing harassment and disparate treatment.

Mr. Miller worked with Mr. Perkins during the relevant time. Mr. Miller alleges he suffered retaliation by the defendants as a result of testimony Mr. Miller gave in an arbitration hearing concerning the defendants' treatment of Mr. Perkins. Defendant, Michael Martelli, is one of the owners of Federal Fruit and is involved in the daily operations of the company. Angel Mondragon was the direct supervisor of Mr. Perkins and Mr. Miller.

On February 28, 2009, Mr. Perkins received a disciplinary warning, often referred to as a write-up. The February 28, 2009, write-up concerned an incident in which Mr. Perkins and Mr. Moore, an African American co-worker, were found sitting and waiting in a company truck. The write-up was written by Alfonso Oiena. *Response* [#71], Exhibit 1, CM/ECF p. 3 (grievance containing Mr. Perkins' description of the write-up). Mr. Mondragon informed Mr. Perkins about the write-up. *Id*. According to Mr. Perkins, on March 2, 2009, he asked Mr. Mondragon whether Mr. Perkins and Mr. Moore were written up because they are black. *Response*, Exhibit 2 (Perkins Affidavit), ¶ 1. Mr. Perkins says Mr. Mondragon responded "yes." *Id*. There is no indication how Mr. Mondragon was aware of the purportedly racist motive of the man, Alfonso Oiena, who wrote the write-up.

On March 11, Mr. Martelli observed Mr. Perkins talking outside with Roberto Villa. According to Mr. Villa, Mr. Martelli said "what the fuck are you doing talking to this nigger?" *Response*, Exhibit 4 (Villa Transcript), 139:13 - 141:1. A short time later, Mr. Martelli turned to Mr. Perkins while pointing his finger at Mr. Perkins and said "you're done, nigger." *Id.*, 140:13 - 142:4. Mr. Villa, Mr. Perkins, and Mr. Martelli then went inside. When inside the warehouse, Mr. Villa heard Mr. Martelli say to Mr. Mondragon, the supervisor, "I'm tired of this motherfucking nigger and this fucking Mexican." *Id.*,

3

143:1 - 143:25.  According to plaintiff Richard Miller, he later heard Mr. Martelli say to Mr. Mondragon "fire the fucking spic and write up the fucking nigger."  *Response*, Exhibit 5 (Miller Transcript), 124:1 -127:25.  However, the timing and the precise subjects of the comments described by Mr. Miller are not stated specifically in Exhibit 5.  As a result of this incident, Mr. Perkins received a written warning.  *Response*, Exhibit 1, CM/ECF p. 4.

On March 19, 2009, Mr. Perkins received a verbal warning from Mr. Mondragon based on the contention that Mr. Perkins pulled the wrong order.  Mr. Perkins says a warehouse worker, Rudolpho, pulled the order for Mr. Perkins.  *Perkins Affidavit*, ¶ 2.  When Mr. Mondragon confronted Mr. Perkins about this issue, Mr. Perkins told Mr. Mondragon that Rudolpho had pulled the order.  *Id*.  Mr. Perkins received a verbal warning, but Rudolpho was not disciplined.  *Id*.  Like Mr. Mondragon, Rudolpho is Hispanic.

On March 24, 2009, Mr. Perkins received a written warning from Mr. Mondragon.  This warning was based on the claim that Mr. Perkins loaded the wrong produce onto a Federal Fruit truck.  *Id*., ¶ 3.  In this instance, Mr. Perkins says he received a picking sheet for Costco bananas.  *Id*.  He gave the picking sheet to Ben Martinez, who pulled the bananas.  According to Mr. Perkins, this was the normal procedure.  After loading the bananas, Mr. Perkins was told that the bananas he was loading were not Costco bananas.  As a result, he unloaded the bananas and then had Mr. Martinez give him Costco bananas.  When Mr. Mondragon confronted Mr. Perkins about this issue, Mr. Perkins told Mr. Mondragon that Mr. Martinez had pulled the order.  *Id*.  Mr. Perkins received a verbal warning, but Mr. Martinez was not disciplined.  *Id*.  Like Mr. Mondragon, Mr. Martinez is Hispanic.  *Id*.

On March 31, 2009, Mr. Perkins received a verbal warning for failure to wear his work badge. *Id*., ¶ 4. Mr. Perkins says the badge was required only on the floor of Federal Fruit and at the time he was not on the floor. On April 9, 2009, Mr. Perkins received a verbal wearing for wearing tennis shoes. *Id*., ¶ 5. Mr. Perkins says he had an injured foot and he had told Mr. Mondragon that he was wearing one work boot and one tennis shoe because of his injured foot. According to Mr. Perkins, Mr. Mondragon told Mr. Perkins this was not a problem. *Id*. Nonetheless, Mr. Perkins received a write-up.

On April 10, 2009, Mr. Perkins received a written warning for not checking in at the warehouse when he returned at the end of his route. *Id*., ¶ 6. Mr. Perkins says it was not possible for him to check in, yet he was given a written warning nonetheless.

On April 21, 2009, Mr. Perkins received a written warming concerning attendance. Mr. Perkins called his supervisor on April 20, 2009, to report that he would not be at work on April 21 because of a court appearance. *Response* [#71], Exhibit 1, CM/ECF p. 17. In the write-up, Mr. Mondragon said he needed more notice of such an absence, and the frequency of Mr. Perkins' absences was unacceptable. *Id*. Mr. Perkins says his understanding was that he must call at least one hour before his shift if he was going to miss work. *Perkins Affidavit*, ¶ 7. He says he called about this absence one day in advance. *Id*.

On April 23, 2009, Mr. Perkins received a written warning for failure to respond to a supervisor's page. *Perkins Affidavit*, ¶ 8. Mr. Perkins says the page was sent to a radio other than his radio.

Mr. Perkins' employment was terminated on May 12, 2009. Federal Fruit says it terminated Mr. Perkins' employment because he was found driving off of his route on

5

May 10, 2009.  Mr. Perkins reported on his trip ticket that he arrived at Liborio 7, a Federal Fruit customer, at 7:45 a.m. on May 10, 2009, and departed at 11:00 a.m.  He noted on the trip ticket "2 Trucks b 4 me."  On that day, a Federal Fruit employee called Mr. Mondragon, at about 10:00 or 10:30 a.m. to report that Mr. Perkins had one delivery and had been gone since 7:00 a.m.  *Motion*, Exhibit C (Mondragon Deposition), 112:4 - 113:4.  Mr. Mondragon, says he had seen Mr. Perkins driving his truck on eastbound I-70 at Quebec earlier that morning, some distance from the location of Liborio 7.  *Id*.

Mr. Mondragon then obtained a statement from the produce manager at Liborio 7.  The produce manager said Mr. Perkins arrived between 8:00 and 8:30 a.m., it took 30 minutes to unload his truck after which Mr. Perkins left.  *Motion*, Exhibit C (Mondragon Deposition), Deposition Exhibit 27, CM/ECF pp. 53 - 54.  Other Federal Fruit employees reported seeing Mr. Perkins' truck at 8:50 a.m. that day some distance from Liborio 7.  *Id*., CM/ECF p. 57.  Mr. Perkins disputes the timing of these events and the nature of the unloading operation that took place at Liborio 7.  Mr. Perkins later said he left Liborio 7 to drive to his apartment because he had forgotten his driver's license.  *Motion*, Exhibit B (Perkins Deposition), 186:2 - 188:10.  Mr. Mondragon decided to terminate Mr. Perkins' employment, and Mr. Martelli agreed with the decision.  *Mondragon Deposition*, 39:18 - 41:16.

Plaintiff, Richard Miller, was employed by Federal Fruit and worked with Mr. Perkins.  On June 23, 2009, Mr. Miller testified at an arbitration hearing concerning the termination of Roberto Villa.  *Response*, Exhibit 5 (Miller's arbitration testimony).  In that testimony, Mr. Miller described the racial slurs allegedly uttered by Mr. Martelli on March 11, 2009.  *Id*.  Seventeen days later, on July 10, 2009, Mr. Miller was fired after an accident in the Federal Fruit parking lot involving Mr. Miller's truck.  *Response*, Exhibit

6

16 (Mondragon testimony), pp. 10, 17. Mr. Martelli was one of the decision makers concerning the termination of Mr. Miller. *Id.*, p. 17.

In the complaint the plaintiffs assert seven claims for relief: (1) a claim by Mr. Perkin under 42 U.S.C. § 1981 for race discrimination; (2) a claim by Mr. Perkins under Title VII for disparate treatment and hostile work environment based on race; (3) a claim by Mr. Perkins and Mr. Miller under Title VII for retaliation by the defendants in response to the plaintiffs' protected opposition to unlawful employment practices; (4) a claim by Mr. Perkins and Mr. Miller for intentional interference with prospective business advantage; (5) a claim by Mr. Perkins and Mr. Miller for outrageous conduct claim; (6) a claim by Mr. Perkins and Mr. Miller for intentional infliction of emotional distress claim; and (7) a claim by Mr. Perkins and Mr. Miller for wrongful / constructive discharge claim.

In an order [#78] filed March 22, 2012, addressing the **Defendants' Motion for Partial Judgment on the Pleadings** [#15], I dismissed Mr Perkins' claim under Title VII to the extent it was asserted against Michael Martelli. In addition, I dismissed the plaintiffs' claim for intentional infliction of emotional distress, because it is duplicative of the plaintiffs' claim for outrageous conduct. Finally, I dismissed parts of the plaintiffs' seventh claim for relief. I dismissed the retaliation claim alleged in the seventh claim for relief because part of that claim is controlled by the National Labor Relations Act and the balance of the retaliation claim duplicates the retaliation claim asserted in the first and third claims for relief. I dismissed the constructive discharge claim of plaintiff Richard Miller because Mr. Miller failed to exhaust his administrative remedies as to that claim.

## IV.  ANALYSIS

### A.  Hostile Work Environment

A claim for hostile work environment requires proof sufficient for a "rational jury [to] find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ***MacKenzie v. City and County of Denver***, 414 F.3d 1266, 1280 (10th Cir. 2005) (quoting ***Penry v. Federal Home Loan of Topeka***, 155 F.3d 1257, 1261 (10th Cir. 1998), ***cert. denied***,. 119 S.Ct. 1334 (1999)) (internal quotation marks omitted; alterations in original).  This standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of [racial] jokes, and occasional teasing," and, thus, to prevent Title VII from becoming "trivialized as a civility code." ***Id.***  Whether this standard is met requires consideration of the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." ***Id.***  In addition, the environment must be both objectively and subjectively hostile or abusive. ***Id.***

Mr. Perkins contends that Mr. Martelli's use of racial epithets directed at Mr. Perkins, on March 11, 2009, reflects a hostile work environment.  Further, Mr. Perkins claims that all of the disciplinary warnings he received after March 11, 2009, also reflect a hostile work environment.  The comments allegedly made by Mr. Martelli on March 11, 2009, are severe but, based on the evidence in the record, these alleged comments were a one time, isolated event.  Conceivably, subsequent disciplinary actions suffered

8

by Mr. Perkins had a racial motivation. However, none of these disciplinary actions included any overt racial comments. Even if these disciplinary actions included a latent racial motivation, these actions were not physically threatening or humiliating. The evidence in the record does not show that these disciplinary actions unreasonably interfered with Mr. Perkins' work. Thus, viewing the evidence in the record in the light most favorable to Mr. Perkins, I conclude that the defendants are entitled to summary judgment on Mr. Perkins' first and second claims for relief to the extent Mr. Perkins asserts a claim of hostile work environment in those claims.

### B.  Judicial Estoppel

Mr. Perkins was a member of a union while employed by Federal Fruit. While he was a Federal Fruit employee, the union filed several grievances on his behalf. After Mr. Perkins' employment was terminated by Federal Fruit, Mr. Perkins reached a settlement with Federal Fruit concerning eight of his union grievances. *Perkins Deposition* [#57-2], Exhibit 13 (Settlement Agreement), CM/ECF pages 38 - 39. The grievances subject to the Settlement Agreement are (1) #109799 concerning a verbal warning on February 28, 2009; (2) #111014 concerning a written warning on March 11, 2009; (3) #110989 concerning a verbal warning given on March 19, 2009; (4) #118074 concerning a verbal warning given on April 9, 2009; (5) #118062 concerning a written warning given on April 10, 2009; (6) #118075 concerning a written warning given on April 23, 2009; (7) #118054 concerning Mr. Perkins' claim he was being harassed since becoming a union steward; and (8) #118055 concerning Mr. Perkins' termination. Motion, Exhibit D (Kouba Affidavit), Exhibit 2; *Response*, Exhibit 1.

The first six grievances all concerned Mr. Perkins' claim that the discipline imposed on him was unjustified and/or wrongful. The seventh grievance concerned

9

alleged harassment of Mr. Perkins.  The eighth grievance, concerning Mr. Perkins' termination, specified article 13 of the collective bargaining agreement as its basis.  Mr. Perkins says this grievance concerned Federal Fruit's failure to follow progressive discipline, as required by the collective bargaining agreement. *Perkins Affidavit*, ¶ 20.

In negotiating the settlement, Mr. Perkins withdrew his other grievances, including grievances concerning race discrimination and retaliation.  *Perkins Affidavit*, ¶ 20.  Mr. Perkins accepted a payment of 54,523.76 dollars to settle the grievances listed above. *Settlement Agreement*, p. 1.

Mr. Perkins says Federal Fruit offered him an additional payment if he would drop his charge of discrimination with the Equal Employment Opportunity Commission. *Perkins Affidavit*, ¶ 20.  Mr. Perkins declined that offer.  *Id.*

The defendants argue that judicial estoppel precludes Mr. Perkins from asserting the disciplinary actions resolved by the Settlement Agreement in support of a prima facie case of discrimination under § 1981 or Title VII.

> "The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " **Bradford v. Wiggins**, 516 F.3d 1189, 1194 (10th Cir.2008) (**quoting New Hampshire v. Maine**, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).  In deciding whether to apply judicial estoppel, courts look to such factors as whether "1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped." *Id*. (quotation omitted).

**Mathews v. Denver Newspaper Agency LLP**, 649 F.3d 1199, 1209 (10th Cir. 2011).

I find and conclude that judicial estoppel is not applicable to Mr. Perkins' claims of race discrimination and retaliation.  The settlement of the grievances enumerated

10

above resolved Mr. Perkins' claims that the grievances were unjust or wrongful but, as the Settlement Agreement was negotiated, Mr. Perkins' claims for race discrimination and retaliation were excluded from the settlement. Accordingly, Mr. Perkins' assertion of these claims in this case is not inconsistent with his grievances or the Settlement Agreement. Mr. Perkins' pursuit of his claims for retaliation and discrimination in this case does not require judicial acceptance of a position contrary to the position Mr. Perkins took in his grievances and the Settlement Agreement, and there is no indication that Mr. Perkins will gain unfair advantage if he is permitted to pursue his claims for retaliation and discrimination in this action.[3]

### C. Intentional Interference with Prospective Business Advantage

The plaintiffs do not respond to the defendants argument that the defendants are entitled to summary judgment on the plaintiffs' claim of intentional interference with prospective business advantage. The plaintiffs did not include this claim in the **Final Pretrial Order** [#76] filed March 5, 2012. A claim not brought forward is considered abandoned, and is appropriately dismissed with prejudice. ***See Frontrange Solutions USA, Inc. v. Newroad Software, Inc.***, 505 F.Supp.2d 821, 837-38 (D. Colo. 2007). The plaintiffs claim of intentional interference with prospective business advantage is dismissed with prejudice.

### D. Outrageous Conduct

The plaintiffs' claim for outrageous conduct is based on the same facts that undergird their other claims. In essence, the plaintiffs contend that Mr. Martelli's alleged racist comments to Mr Perkins, Mr. Mondragon's alleged statement that Mr.

---

[3] For the first time in their reply [#73], the defendants argue that judicial estoppel also applies to claims related to grievances filed by Mr. Miller. I will not address an argument made for the first time in the reply.

11

Perkins was written up because he is black, the alleged disparate treatment based on Mr. Perkins' race, and the allegedly retaliatory termination of Mr. Perkins and Mr. Miller's employment, considered together, present an arguable claim for outrageous conduct. I disagree.

The elements of a claim for outrageous conduct are (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) defendant's conduct caused plaintiff to suffer severe emotional distress. ***McCarty v. Kaiser-Hill Co., L.L.C.***, 15 P.3d 1122, 1126 (Colo. App. 2000). The question whether conduct is outrageous is generally one of fact to be determined by a jury, but it is the initial responsibility of a court to determine whether reasonable persons could differ on the question. *Id*. In ***McCarty***, the court examined an outrageous conduct claim based on evidence that an employer singled the plaintiff out for scrutiny, threatened to fire those coworkers who associated with plaintiff, threatened the plaintiff by phone, twice attempted to assault him with an automobile, and terminated the plaintiff's employment. However, the court concluded that this conduct could not support a finding that the conduct "was so extreme in degree, as to go beyond all possible bounds of decency, or to be regarded as atrocious and utterly intolerable in a civilized community."

The plaintiffs' version of the key events in this case does not rise to the level of the harassment at issue in ***McCarthy***. Viewing the evidence in the record in the light most favorable to the plaintiffs, I conclude that the defendants are entitled to summary judgment on the plaintiffs' fifth claim for relief for outrageous conduct.

### E. Other Claims

Concerning plaintiffs' remaining claims, I discern one or more genuine issues of

material fact that are not amenable to summary resolution.  Accordingly, as to these claims, the defendants' motion for summary judgment must be denied.  Those remaining claims are (1) the claim of Mr. Perkins under § 1981 for race discrimination, excepting the claim of hostile work environment asserted as part of this claim (first claim for relief); (2) the claim of Mr. Perkins under Title VII for race discrimination, except for the claim of hostile work environment asserted as part of this claim (second claim for relief); 3) the claim of Mr. Perkins and Mr. Millers for retaliation (third claim for relief); and (4) the claim of Mr. Perkins under Title VII that he was discharged based on his race (part of the seventh claim for relief).

## V.  CONCLUSION & ORDERS

Viewing the evidence in the record in the light most favorable to Mr. Perkins, I conclude that the defendants are entitled to summary judgment on Mr. Perkins' first and second claims for relief to the extent Mr. Perkins asserts a claim of hostile work environment in those claims.  Viewing the evidence in the record in the light most favorable to the plaintiffs, I conclude that the defendants are entitled to summary judgment on the plaintiffs' fifth claim for relief for outrageous conduct.  Further, I conclude that the plaintiffs claim of intentional interference with prospective business advantage must be dismissed with prejudice because the plaintiffs have abandoned this claim.

With respect to plaintiffs' remaining claims, I perceive one or more genuine issues of material fact that are not amenable to summary resolution.  Accordingly, the defendants' motion for summary judgment must be denied as to (1) the claim of Mr. Perkins under § 1981 for race discrimination, excepting the claim of hostile work environment asserted as part of this claim (first claim for relief); (2) the claim of Mr.

Perkins under Title VII for race discrimination, except for the claim of hostile work environment asserted as part of this claim (second claim for relief); 3) the claim of Mr. Perkins and Mr. Millers for retaliation (third claim for relief); and (4) the claim of Mr. Perkins under Title VII that he was discharged based on his race (part of the seventh claim for relief).

    **THEREFORE, IT IS ORDERED** as follows:

    1. That the **Defendants' Motion for Summary Judgment** [#57] filed January 9, 2012, is **GRANTED** in part and **DENIED** in part as follows:

        A. That the **Defendants' Motion for Summary Judgment** [#57] filed January 9, 2012, is **GRANTED** as to the claims alleging hostile work environment asserted as part of the first and second claims for relief;

        B. That the **Defendants' Motion for Summary Judgment** [#57] filed January 9, 2012, is **GRANTED** as to the fifth claim for relief for outrageous conduct;

        C. That the **Defendants' Motion for Summary Judgment** [#57] filed January 9, 2012, is **GRANTED** as to the plaintiffs fourth claim for relief for intentional interference with prospective business advantage; and

        D. That otherwise, the **Defendants' Motion for Summary Judgment** [#57] filed January 9, 2012, is **DENIED**.

    Dated April 12, 2012, at Denver, Colorado.

                                            **BY THE COURT:**

                                            */s/ Robert E. Blackburn*
                                            Robert E. Blackburn
                                            United States District Judge