**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge James A. Parker, sitting by designation**

**Civil Case No. 11-cv-00542-JAP-KLM**

**RICHARD PERKINS, and
RICHARD MILLER,**

     **Plaintiffs,**

**v.**

**FEDERAL FRUIT & PRODUCE COMPANY, INC.,**
**a Colorado corporation, and
MICHAEL MARTELLI, individually,**

     **Defendants.**

**MEMORANDUM OPINION AND ORDER
REGARDING
DEFENDANTS' MOTION FOR REMITTITUR**

After a trial on May 16-25, 2012, Defendants Federal Fruit & Produce Company, Inc. (FFP) and Michael Martelli (Martelli) filed DEFENDANTS' MOTION FOR A REMITTITUR OF THE JURY VERDICT PURSUANT TO FED. R. CIV. P. 59(e) (Doc. No. 174) (Motion for Remittitur) asking for an order of remittitur of damages, or, in the alternative, a new trial on damages.  Because the Motion is premature as to some of the damages awards, the Court will

1

deny the Motion in part without prejudice.[1]  However, as to the damage awards that remain unchanged, the Court will grant the Motion for Remittitur in part.  Prior to this Memorandum Opinion and Order, the Court ruled on two other post trial motions: DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) (Doc. No. 163) (Motion for Judgment as a Matter of Law) and DEFENDANTS' MOTION FOR RECONSIDERATION AND TO VACATE TRIAL AND JUDGMENT IN FAVOR OF PERKINS AND MILLER (1) BECAUSE OF  IRREGULARITIES; (2) FOR LACK OF JURISDICTION; (3) PURSUANT TO THE COURT'S INHERENT POWERS OR RULE 59 OR 60, AND/OR FOR A NEW TRIAL PURSUANT TO RULE 59 (Doc. No. 164) (Motion for Reconsideration).  In these rulings, the Court has set aside some damage awards and the Court has ordered a new trial on some claims and damage awards.

Defendants assert that the Motion for Remittitur is premature because until the Court rules on the other two motions, there is no final judgment on damages.  Noting that Plaintiffs disagree with Defendants' assessment, Defendants state that they have filed the Motion for Remittitur to preserve their right to remittitur.  Defendants correctly assert that the Motion for Remittitur is premature if the jury's verdict and damage awards are altered in the Court's rulings

---

[1] The Court has also considered PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR REMITTITUR OF THE JURY VERDICT (Doc. No. 180) (Response) and Defendants have filed DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR REMITTITUR OF THE JURY VERDICT (Doc. No. 185) (Reply). The Court requested and has received supplemental briefing and the Court has considered that briefing as well. *See* DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR ADDITIONAL ANALYSIS ON PUNITIVE DAMAGES ISSUES (Doc. No. 188); PLAINTIFFS' SUPPLEMENTAL BRIEF RE: COURTROOM MINUTES DATED NOVEMBER 19, 2012 (DOC. NO. 186) (Doc. No. 189); and DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR ADDITIONAL ANALYSIS ON PUNITIVE DAMAGES ISSUES (Doc. No. 190).

on the Motion for Judgment as a Matter of Law and on the Motion for Reconsideration. To date, the Court has denied Defendants' Motion for Judgment as a Matter of Law and has partially granted Defendants' Motion for Reconsideration. The Court will enter an Amended Judgment reflecting those rulings and will enter a Second Amended Judgment after Perkins indicates whether he will accept remittitur or opt for a new trial on damages.

>I. The Post Trial Rulings on Defendants' Motion for Judgment as a Matter of Law and Defendants' Motion for Reconsideration

The jury returned a verdict and awarded compensatory and punitive damages in favor of Perkins on all of his claims against FFP under Title VII and against FFP owner, Martelli, under 42 U.S.C. § 1981 for (1) disparate treatment based on race; (2) discriminatory discharge from his employment; and (3) retaliatory discharge. On Perkins' disparate treatment claims, the Court upheld the jury's original verdicts and awards. On Perkins' disparate treatment claim against FFP, the Court has upheld the award of $10,000 in compensatory damages and $65,000 in punitive damages. On Perkins' disparate treatment claim against Martelli, the Court has upheld the award of $10,000 in compensatory damages and $65,000 in punitive damages.

On Perkins' discriminatory and retaliatory discharge claims, the Court has determined that the compensatory damages awarded for Perkins' emotional distress against both FFP and Martelli are duplicative because the awards allow Perkins to recover more than once for the emotional distress he experienced after his employment was terminated. The Court has determined that the jury's award of $50,000 in compensatory damages for Perkins' emotional distress against FFP on Perkins' retaliatory discharge claim represents the appropriate amount of damages for Perkins' post discharge emotional distress. Because the other awards of emotional distress damages, $5,000 against FFP for discriminatory discharge and $15,000 against Martelli

for discriminatory discharge, are duplicative of the $50,000 award, the Court has subsumed those awards into the $50,000 award. In addition, because the decision to discharge Perkins was made collectively by FFP owner Martelli and Perkins' FFP supervisor Angel Mondragon (Mondragon), the Court has determined that Martelli is jointly and severally liable with FFP for $15,000 of the $50,000 award.

On Perkins' retaliatory discharge claim against FFP, the Court has ordered a new trial on the amount of compensatory damages for lost wages and benefits. The other awards on Perkins' retaliatory discharge claim against FFP remain essentially unchanged: (1) $50,000 in compensatory damages for emotional distress ($15,000 of which is joint and several with Martelli); and (2) $350,000 in punitive damages. A new trial on liability and damages has been ordered on Perkins' retaliatory discharge claim against Martelli; thus, the award of $50,000 in compensatory damages for emotional distress and the award of $150,000 in punitive damages against Martelli have been set aside. *See* MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION AND TO VACATE TRIAL AND JUDGMENT AND/OR FOR A NEW TRIAL.

Although the Court has found the awards for Perkins' emotional distress caused by his discharge to be duplicative, the punitive damages awards for discriminatory discharge remain unchanged: (1) $65,000 in punitive damages against FFP; and (2) $65,000 in punitive damages against Martelli.

The jury returned a verdict in favor of Miller on his Title VII and § 1981 claims against FFP and Martelli for retaliatory discharge. The Court has ordered a new trial on Miller's damages, both compensatory and punitive, as to both of his claims. Therefore, the Motion for Remittitur is premature as to all awards of damages on Miller's claims.

II. Motion For Remittitur Is Ripe Only As To Some, But Not All, of Perkins' Claims

Only the damage awards on two of Perkins' claims are unaltered by the Court's post trial rulings: (1) the award of $10,000 in compensatory damages and $65,000 in punitive damages on Perkins' disparate treatment claim against FFP; and (2) the award of $10,000 in compensatory damages and $65,000 in punitive damages on Perkins' disparate treatment claim against FFP. In the MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, the Court held that these awards are not duplicative because Perkins proved that he suffered emotional distress caused by disparate discipline imposed by Perkins' FFP supervisor Mondragon. Perkins also proved that he suffered emotional distress from Martelli's treatment of Perkins on March 11, 2009 when Martelli angrily ordered Mondragon to write up the nigger, referring to Perkins. Since these awards are unaltered, they are ripe for consideration of remittitur; thus, the Court will address only those awards. As for the other damage awards, the Motion for Remittitur is premature and will be denied without prejudice. *See Bisbal-Ramos v. City of Mayaguez,* 467 F.3d 16, 27 (1st Cir. 2006) (vacating district court's order reducing compensatory damages, remanding so that court may issue order allowing remittitur or new trial, and refusing to address constitutionality of punitive damage award because, upon remand, plaintiff might opt for a new trial and "it would be premature . . . to approve a punitive damages award based on the compensatory award from the first trial").

III. Background

FFP is a produce distributing company located in Denver, Colorado that offers same-day delivery of produce to restaurants, grocery stores, military bases, and nursing homes. (Doc. No. 184-2.) Perkins, an African-American, was employed at FFP as a truck driver from October 3, 2008 to May 12, 2009. The jury found that Perkins was subjected to disparate treatment at FFP,

5

that Perkins was discharged based on his race, and that Perkins was discharged in retaliation for his complaints and Union grievances about race discrimination. During his employment at FFP, Perkins was a member of the Teamsters Union, and from February 2008 until May 2009, Perkins was a Union steward. Perkins' immediate supervisor was Mondragon. Martelli, one of FFP's owners, managed the daily operations at the FFP warehouse. The Court's opinions on Defendants' other two post trial motions have a more complete summary of the evidence at trial; thus, the Court will summarize the evidence only as to four significant incidents.

The first significant incident occurred on February 28, 2009, when Perkins received a disciplinary write up for sitting in his truck with Gary Moore (Moore), another African-American truck driver, while their paperwork was being completed for that day's deliveries. (Tr. Ex. D FFP 00167.) For this and all subsequent write ups, Perkins submitted Union grievances complaining of unfair treatment, and in some of the grievances, Perkins complained about racial discrimination. (*See* Trial Ex. D.)

The second incident occurred on March 2, 2009, just after Perkins became a Union steward. Perkins and other Union stewards had a meeting with Mondragon and another FFP supervisor. Perkins testified that at the meeting he generally complained to Mondragon about working conditions. Perkins testified that he also specifically complained about the February 28, 2009 write up he and Moore received which Perkins claimed showed racial bias because other employees, who were Latinos, were not written up for the same conduct. Perkins testified that, in response, Mondragon stated that Perkins and Moore were written up because "they were black." (Tr. 983:2-6 .) Mondragon testified that race discrimination was not discussed at the meeting and denied saying that Perkins and Moore were written up because they were black. (Tr. 589:9-12.)

The third incident occurred during the early morning hours of March 11, 2009.  Martelli arrived at FFP around 5:30 am and noticed Perkins and another truck driver, Robert Villa-Moreno (Moreno), talking to each other in the parking lot during their pre-trip truck inspections.  Martelli confronted Perkins and Moreno telling them to "cut out the bullshit and get back to work." (Tr. 272:22-25.)  Perkins, who then walked into the warehouse, and Miller, who was already inside the warehouse, testified that as Martelli walked into the office area of the FFP warehouse, Martelli yelled to Mondragon, "I am fucking tired of that nigger and Mexican[,]" and that Martelli loudly ordered Mondragon to "write up the nigger and fire the spick." (Tr. 1014:16-20; Tr. 147:19-149:16; Tr. 201:1-8.)

The fourth significant incident occurred two months later.  On May 10, 2009, Mondragon wrote up and fired Perkins for "unknown whereabouts for 3+ hours" because Perkins returned late from a delivery only 6-8 miles from the FFP warehouse.  After getting a statement from the person who received Perkins' sole delivery that day and a statement from another FFP employee who observed Perkins' truck out of the delivery area, Mondragon determined that Perkins' explanation about his whereabouts was unacceptable and dishonest.  Martelli approved of Mondragon's decision to fire Perkins, and Perkins was discharged on May 12, 2009.

IV.  Standard of Review

A.  Remittitur

In determining whether to grant a motion for remittitur, a court must review the jury's verdict to determine if substantial evidence supported the amount of damages awarded.  *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1448 (10th Cir. 1987).  If the court finds that insufficient evidence exists, or that the amount of damages was a product of jury passion or prejudice, the court then may determine a reasonable amount as the plaintiff's damages and allow the plaintiff

to remit the excess over that amount. *See Malandris v. Merrill Lynch, Pierce, Fenner &Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981) (en banc) (plurality opinion), *cert. denied,* 464 U.S. 824 (1983) and *Hughes v. Regents of the Univ. of Colo.*, 967 F. Supp. 431, 437 (D. Colo. 1996) (explaining that regarding remittitur, the court must determine whether there is a rational relationship between the specific injury sustained and the amount of damages awarded). A remittitur of damages, however, may not be entered without the plaintiff's consent. *Id.* at 439. Should the plaintiff not consent to remittitur, the court must order a new trial on damages. *Id.*

### B. Punitive Damages

The Supreme Court has established three "guideposts" for determining the reasonableness of punitive damages: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575-76 (1996). The Supreme Court has identified several "reprehensibility" factors relevant to punitive damages claims: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm*,

538 U.S. at 419.[2]

"A chronology of the Supreme Court's and the United States Court of Appeals for the Tenth Circuit's case law on the constitutional limitations on punitive damages reveals an increasingly restrictive view of punitive damages awards that greatly exceed compensatory damages." *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 791 F. Supp. 2d 1026, 1033 (D. N.M. 2011). "When compensatory damages are substantial, then a lesser ratio [of punitive to compensatory], perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* (quoting *State Farm*, 538 U.S. at 425). The Court in *Guidance Endodontics*, stated that under the holding of *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008), "it may be difficult to justify under the Due Process Clause more than a one to one ratio in cases involving substantial compensatory, purely economic damages." *Id.* See also *Jones v. United Parcel Service*, 674 F.3d 1187, 1192 (10th Cir. 2012) (concluding that punitive damages in the amount of $2 million was unconstitutionally excessive in light of a compensatory award of

---

[2] On November 19, 2012 oral argument was held on Defendants' post-trial motions. The Court asked the parties to submit supplemental briefing on three issues related to punitive damages:
> (1) Under the *State Farm* reprehensibility factors, can emotional distress be considered a physical harm or a purely economic harm?
> (2) Does the reprehensibility factor considering the health and safety of others include consideration of the health and safety of the plaintiff bringing the claim?
> (3) Are large punitive damages awards more acceptable in cases involving race discrimination as opposed to other forms of discrimination, such as gender, disability, or age?

(Tr. Nov. 19, 2012 106:2-14.) The parties timely submitted their supplemental briefs, and the Court has considered the arguments in this ruling. *See* DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S REQUEST FOR ADDITIONAL ANALYSIS ON PUNITIVE DAMAGES ISSUES (Doc. No. 188); PLAINTIFFS' SUPPLEMENTAL BRIEF RE: COURTROOM MINUTES DATED NOVEMBER 19, 2012 (Doc. No. 189); and DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR ADDITIONAL ANALYSIS ON PUNITIVE DAMAGES ISSUES (Doc. No. 190).

$630,307 and remanding to district court with instruction to enter punitive damage award equal to the compensatory damage award).

V. Discussion

A. Are Punitive Damages Excessive?

Defendants argue that the total awards of punitive damages against FFP and Martelli, when compared with the total awards of compensatory damages, were excessive. Although they disagree with Defendants on the reasonableness of the awards in this case, Plaintiffs do not challenge the basic structure of Defendants' argument. However, the case law instructs courts to compare punitive damage awards separately and independently as between defendants and as between claims. *See Applied Capital, Inc. v. Gibson*, No. 04 CV 0098, 2008 WL 4821336, *17-18 (D. N.M. May 28, 2008) (awarding and analyzing punitive damages separately against each defendant). Hence, the Court will examine the punitive damages awarded against FFP as compared to the compensatory damages awarded against FFP separately from its examination of the punitive damages awarded against Martelli in comparison with the compensatory damages awarded against Martelli. *U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1261 (10th Cir. 1988)(holding that liability for punitive damages is several and independent) *implied overruling on other grounds as recognized by Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996)).

On Perkins' disparate treatment claim against FFP, the jury awarded punitive damages in the amount of $65,000 and compensatory damages of $10,000, which yields a 6.5 to 1 ratio of punitive to compensatory damages. The same ratio applies to the punitive damages compared to compensatory damages awarded against Martelli on Perkins' disparate treatment claim. Defendants assert that under the three guideposts of *Gore* and *State Farm*, discussed *supra* at pp.

8-9 of this opinion, the amount of punitive damages awarded against FFP and against Martelli is excessive.

In considering the first and most important *Gore* factor bearing upon the reasonableness of a punitive damages award—the degree of reprehensibility of Defendants' conduct—the first two considerations weigh decisively against a finding of extreme reprehensibility, as Perkins' harm was not physical and neither Mondragon nor Martelli exhibited a disregard for Perkins' or other employees' health or safety. To the extent that the remaining considerations demonstrate the reprehensibility of Defendants' actions, and therefore support awards of punitive damages, those concerns can be adequately accounted for in this case by permitting reduced awards. The second Supreme Court guidepost, the ratio of actual harm to punitive damages, also supports a reduction, as does the third factor, which compares the award with awards from comparable cases or what is authorized by a relevant statute. After weighing all these considerations, the Court concludes that remittitur of the punitive damages awarded is appropriate under the circumstances.

1. Degree of Reprehensibility of Defendants' Actions

The reprehensibility of the conduct at issue is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *Gore*, 517 U.S. at 575. Defendants contend that neither Mondragon's nor Martelli's conduct merits ". . . the excessive punitive damages the jury awarded," since they never engaged in violent conduct. (Mot. at 16) In *Gore*, the Supreme Court noted that damages for nonviolent conduct should be lower than damages for violent conduct. *Id.* at 576-77 (noting that BMW's fraud was of a non-violent nature). Furthermore, Defendants assert, even if the issue is whether the harm that resulted from a defendant's actions was "physical" rather than economic, Perkins' "garden variety emotional distress is not

11

considered a physical injury" in the relevant case law. *See* DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR ADDITIONAL ANALYSIS ON PUNITIVE DAMAGES ISSUES (Doc. No. 188) (Defendants' First Supp. Brief at 4-7) and DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S REQUEST FOR ADDITIONAL ANALYSIS ON PUNITIVE DAMAGES ISSUES (Doc. No. 190) ("Defendants' Second Supp. Brief").  Defendants further argue that no evidence "support[s] the contention that Defendants acted with reckless disregard for [Perkins' or other employees'] health or safety," under the second reprehensibility factor, nor is there evidence that Defendants' conduct was part of "a pattern of discriminatory conduct," under the fourth factor. (Rem. Mot. at 16.)  Finally, Defendants contend, as they did in the Motion for Judgment as a Matter of Law, that "the evidence did not support the jury's findings that Defendants acted with malice or reckless indifference to Plaintiffs' federally protected rights," thus not satisfying the fifth reprehensibility factor. (*Id.*)

Plaintiffs respond, "[t]here was significant evidence from which the [j]ury could have found 'reckless indifference' or 'malice,' . . . [so] the punitive damage award is not unreasonable." (Resp. at 15.)  Additionally, Perkins contends that Defendants' conduct met all the reprehensibility factors: Perkins' injuries included physical symptoms such as depression; Defendants' conduct rose to the level of reckless disregard or malice for Perkins' well-being; Perkins was financially vulnerable; there was evidence regarding repetition of Defendants' conduct; and the jury found that Defendants acted with malice or reckless indifference to Perkins' federally protected rights. (*Id.* at 17.)

After weighing the relevant reprehensibility factors, the Court believes that Defendants' conduct supports awards of punitive damages on Perkins' disparate treatment claims.  However,

12

the Court agrees with Defendants that the awards exceed the bounds of reasonableness. As to the first reprehensibility factor, the Supreme Court's words point to actual violent conduct. *See Gore*, 517 U.S. at 576-77. In the *State Farm* case, the Supreme Court rephrased the factor as addressing "physical as opposed to economic harm" to the plaintiff. 538 U.S. at 419. However, the meaning is the same: the factor looks to whether or not the defendant's conduct aimed at or resulted in serious physical injury to the plaintiff. *Id.* In this case, Defendants did not use violence, and Defendants' conduct, while resulting in emotional distress, did not cause physical injury. *See Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 148 (2d Cir. 2010) (holding that even though the evidence supported damages for emotional pain and suffering due to racial discrimination, it was "clear that [the defendant's] conduct did not result in physical injury to [the plaintiff]."). Though Perkins presented evidence of his emotional distress, it is not properly considered "physical." The Court does not discount the anxiety and depression that Perkins suffered as a result of disparate treatment while he worked at FFP, but this type of emotional distress is not the kind of "physical harm" that the first reprehensibility factor addresses since it did not result from violence or threats of violence by Defendants. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001) (explaining that in the "hierarchy of reprehensibility," acts and threats of violence are at the top).

Furthermore, Defendants' conduct "evinced no indifference to or reckless disregard for the health and safety of others." *BMW*, 517 U.S. at 559-60. As with the first reprehensibility factor, the second one is clearly aimed at addressing situations involving physical injuries or violent actions. Although FFP's conduct, through Mondragon and Martelli's conduct may have been insensitive to the emotional toll their actions would take on Perkins, their conduct does not equate to indifference to his health and safety. *Thomas*, 652 F.3d at 148; *MacMillan v.*

13

*Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 566 (S.D. N.Y. 2012).

The other factors in the reprehensibility analysis weigh in favor of Perkins and against Defendants. Perkins was comparatively financially vulnerable since Defendants had the ability to terminate Perkins' employment. However, under the Collective Bargaining Agreement, Perkins was afforded some protection through the grievance process. Defendants' words and actions display a degree of malice or hostility toward Perkins. It was no accident that Martelli, Mondragon, and Stan Kouba, spoke to and acted toward Perkins in the way they did. Martelli loudly uttered humiliating racial epithets, Mondragon disparately disciplined Perkins, and Stan Kouba, another FFP owner, accused Perkins of playing the "race card" when Perkins complained about racial discrimination one month before Perkins was fired.

Finally, the Court's evaluation of reprehensibility is influenced somewhat by a belief that racial discrimination is more egregious than other types of discrimination. Defendants argue that the "Congress [has] elected not to set race apart from gender, disability, religion, color, or national origin in terms of available remedies . . . ." (Defendants' First Supp. Brief at 11.) However, the Court is not convinced that the equality of remedies for different forms of discrimination means that all forms of discrimination are alike in terms of reprehensibility. As the Ninth Circuit noted, "the reprehensibility of the fraudulent business practices at issue in [*Gore* and *State Farm*] is different in kind from the reprehensibility of intentional discrimination on the basis of race or ethnicity. . . . Although *Gore* held that "purely economic" harms are less likely to warrant substantial punitive damages awards, . . . intentional discrimination is a different kind of harm, a serious affront to personal liberty." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1043-44 (2003). The Court agrees with the statements made in *Sherman v. Kasotakis*, 314 F. Supp. 2d 843 (N.D. Iowa 2004), "[w]hile this case is not one in which the

'highest' threshold of reprehensibility is present (i.e. acts and threats of violence), . . . the degradation of an individual in this fashion based solely on their race in today's society certainly falls, in this court's view, in the upper echelon of reprehensible conduct." *Id.* at 872-73. Though it is not the deciding factor, the special egregiousness of racial discrimination supports the Court's conclusion the Defendants' conduct was sufficiently reprehensible to warrant punitive damages.

2. Disparity Between Harm Suffered and Punitive Damage Award

*Gore's* second guidepost addresses the disparity between the harm suffered by the plaintiff (as measured by compensatory or other damages) and the amount of punitive damages. *See Gore*, 517 U.S. at 580-83. The Supreme Court has indicated that "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *State Farm*, 538 U.S. at 425. However, because the reason for and size of punitive damages must depend on each case's circumstances, the Supreme Court has been "reluctant to identify concrete constitutional limits on the ratio between harm . . . to the plaintiff and the punitive damages award." *Id.* at 424. As the Tenth Circuit recently noted, "the [Supreme] Court has made clear that the amount of compensatory damages awarded plays a role in determining whether a punitive damage award is appropriate. 'When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.'" *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207 (10th Cir. 2012), *cert. denied,* 133 S. Ct. 413 (2012) (citing *State Farm*, 538 U.S. at 424). In *Jones*, the Tenth Circuit reduced punitive damages from a slightly over 3:1 punitive-to-actual damages ratio to a 1:1 ratio in part because the plaintiff's actual damages of $630,307 were substantial.

Although Perkins' punitive damages compared to compensatory damages are a single

digit ratio, 6.5 to 1, it is a high single digit ratio, especially given the Supreme Court's and Tenth Circuit's recent moves to enforce much smaller, even 1:1, ratios. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 515 (2008); *Jones, supra*. Therefore, the Court believes that the ratio of punitive damages to compensatory damages is excessive and supports remittitur.

### 3. Difference Between This Punitive Damages Award and Comparable Awards

The final *Gore* guidepost asks courts to compare punitive damages with statutory civil penalties, if any, for the relevant conduct. *See Gore*, 517 U.S. at 583-85. The point is to defer to prior legislative determinations of what are the appropriate sanctions for certain kinds of conduct. *See id.* at 583 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S.257, 301 (1989) (O'Connor, J., opinion concurring in part and dissenting in part)). The maximum amount of compensatory and punitive damages that can be awarded under Title VII for violations by an employer of FFP's size is $50,000. 42 U.S.C. § 1981a(b)(3)(A). Although the Court is only looking at the awards on one of Perkins' claims, it is clear that the jury awarded far more than $50,000 on all of Perkins' claims. Accordingly, the third guidepost warrants a reduction in punitive damages.

In sum, the Court finds that the punitive damages awards against FFP and Martelli of $65,000, an amount 6.5 times the compensatory damages awarded, $10,000, are unreasonable. The Court believes that an award twice the amount of the compensatory damages would be appropriate; therefore, the Court will order remittitur of all punitive damages above $20,000 on Perkins' claim of disparate treatment against FFP. Likewise, the Court will order remittitur of all punitive damages above $20,000 on Perkins' claim of disparate treatment against Martelli. Perkins may consent to the remittitur and accept the amount of $20,000 against FFP for punitive

damages and the amount of $20,000 against Martelli on these disparate treatment claims. If Perkins refuses to consent, a new trial will be held. *Hughes*, 967 F. Supp. at 439.

IT IS ORDERED that the DEFENDANTS' MOTION FOR A REMITTITUR OF THE JURY VERDICT PURSUANT TO FED. R. CIV. P. 59(e) (Doc. No. 174) is granted in part and denied in part as follows:

1. By May 31, 2013, Perkins may either accept the remitted amount of $20,000 in punitive damages on his disparate treatment claim against FFP or opt for a new trial on compensatory and punitive damages on this claim.

2. By May 31, 2013, Perkins may either accept the remitted amount of $20,000 in punitive damages on his disparate treatment claim against Martelli or opt for a new trial on compensatory and punitive damages on this claim.

3. In all other respects, the DEFENDANTS' MOTION FOR A REMITTITUR OF THE JURY VERDICT PURSUANT TO FED. R. CIV. P. 59(e) (Doc. No. 174) is denied without prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Entered this 14th day of May, 2013.