IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00542-JAP-KLM

RICHARD PERKINS, individually, and
RICHARD MILLER, individually,

     Plaintiffs,

v.

FEDERAL FRUIT & PRODUCE COMPANY, INC., a Colorado corporation, and
MICHAEL MARTELLI, individually,

     Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Additional Discovery** [#210][1] (the "Motion"). Plaintiffs filed a **Response to Motion for Additional Discovery** [#214] and Defendants filed a **Reply in Support of Their Motion for Additional Discovery** [#221]. The Court has reviewed the case file and applicable law and is fully advised in the premises. For the reasons discussed below, the Motion [#210] is **GRANTED in part**, as explained below.

## I. Procedural History

Plaintiffs Richard Perkins ("Perkins") and Richard Miller ("Miller") were employed by Defendant Federal Fruit & Produce Company, Inc. ("Federal Fruit") as truck drivers.

---

[1] "[#210]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Defendant Michael Martelli ("Martelli") is one of the owners of Federal Fruit. [#76] at 16-17. Plaintiffs asserted a variety of claims against Defendants relating to termination of Mr. Perkins' employment and the alleged constructive discharge of Mr. Miller. [#7]

The Motion requests post-trial discovery relating to new evidence presented by Plaintiffs at trial. The case was tried to a jury in May of 2012. After entry of verdicts in favor of Plaintiffs, the District Judge granted Defendants' motion for new trial as to Mr. Perkins' retaliatory discharge claim against Mr. Martelli, Mr. Perkins' damages (lost wages and benefits only) on his unlawful discharge claim against both Defendants, Mr. Perkins' damages (compensatory and punitive) on his disparate impact claim against both Defendants, and Mr. Miller's damages (compensatory and punitive) on his retaliatory discharge claim against both Defendants. In a lengthy Order on Defendants' requests for post-trial relief [#194], the District Judge made the following findings regarding the need for a new trial which are relevant to the discovery issues now before the Court:

- "Perkins' contradictory testimony about the date he began post discharge employment with GT Express affected Perkins' expert's calculation of Perkins [sic] net loss of wages and benefits related to Perkins [sic] retaliation claims. Thus, the jury's determination of lost wages and benefits was based on speculation." *Id.* at 2.

- "At trial, Defendants were surprised and unfairly prejudiced by testimony that Perkins prepared an additional Union grievance but the grievance was then misplaced by the Union. This missing grievance was important evidence of Perkins' protected activity supporting his retaliation claim against Martelli." *Id.*

- "Prior to trial, Miller failed to reveal that he had been convicted for a crime involving fraud. Miller also failed to inform [Federal Fruit] that Miller knew that his [commercial driver's license] was suspended three days after Miller began working for [Federal Fruit]. And, Miller failed to explain his testimony that he had been married for 27 years while at the same time Miller owed child support to his wife. These three areas of evidence would have been admissible primarily to prove that

2

> Miller did not suffer emotional distress due to his discharge from [Federal Fruit]. The evidence would also have been admissible to attack Miller's credibility." *Id.* at 3.

- "In sum, [at trial] Perkins affirmed or proved the protected activity outlined in Perkins' EEOC charge described in paragraphs 1), 2), 6), and 7) [ ], but Perkins recanted the protected activity outlined in Perkins' EEOC charge described in paragraphs 3), 4), and 5) [ ]. In addition, two of Perkins' protected activities proven at trial were not mentioned in Perkins' EEOC charge. First, Perkins' EEOC charge failed to mention the March 23, 2009 grievance complaining about race discrimination that allegedly occurred on March 19, 2009. . . . Second, Perkins' EEOC charge failed to mention the controversial grievance brought up for the first time at trial in which Perkins specifically complained about Martelli's use of the term 'nigger' on March 11, 2009. According to Perkins' and [Union business representative] Medina's testimony, the Union misplaced this grievance. To explain the discrepancies between his EEOC charge and the trial evidence, Perkins testified that his [former] attorney, Paula Greisen, drafted the EEOC charge, and Perkins signed it without reading it." *Id.* at 26-27.

- "Perkins' grievance (Ex. D FFP 00171) complaining about the write up Perkins received on March 11, 2009, was very important to Defendants not for what it stated but for what it did not state. In that grievance, Perkins did not specifically complain about Martelli's use of the epithet 'nigger,' arguably the most significant event supporting Perkins' claims." *Id.* at 37.

- "At trial, testimony about the 'missing' grievance was important evidence of protected activity that supported Perkins' retaliation claim against Martelli. The testimony about the grievance also bolstered Perkins' version of events that occurred on March 11, 2009, which were [sic] vigorously contested by Defendants. . . . Significantly, only one of Perkins' protected activities was specifically directed at Martelli; the missing March 11, 2009 grievance complaining about Martelli's use of a racial epithet on March 11, 2009. . . .Thus, the Court concludes that Perkins' failure to inform Defendants about this significant piece of evidence caused Defendants to be unfairly prejudiced in their defense of Perkins' retaliation claim against Martelli. . . . Perkins had a duty to inform Defendants that Perkins and Medina would testify that Perkins prepared the grievance and the Union lost it. . . . Perkins did not merely fail to produce a document, he failed to inform Defendants of the existence of a critical document about which he intended to present testimony. . . . Hence, the Court will vacate the

3

judgment against Martelli on Perkins' retaliation claim and will grant a new trial on that claim under Rule 60(b)(1) and Rule 60(b)(3) [relief from judgment based on "surprise" and "fraud, misrepresentation, or misconduct by an opposing party]." *Id.* at 43-44, 47-51.

- "Importantly, the discrepancies in evidence at trial [about when Mr. Perkins began working for his subsequent employer, GT Express] left the jury with no solid basis on which to award lost wages and benefits because the jury had no way to calculate the amount of Perkins' actual wages that would be subtracted from the amount of wages that Perkins would have earned at [Federal Fruit] if he had not been fired. . . . The inaccurate information given to Defendants prior to trial, on which [Plaintiffs' damages expert] Dr. Pacey based her calculations, justifies setting aside not only the jury's award of damages for Perkins' lost wages and benefits but also the Court's Judgment imposing joint and several liability on [Federal Fruit] and Martelli for those damages. . . . Perkins failed to supplement his discovery responses in which he told Defendants he began working for GT Express full time in May 2011, whereas at trial, Perkins claimed for the first time that he began working part time for GT Express in October 2010.  This ruling recognizes Perkins' lack of candor in discovery on this and other subjects as the basis on which to order a new trial." *Id.* at 64, 69 n. 32.

- "The Court finds that under Rule 60(b)(2), the new evidence regarding Miller's criminal history and about Miller's knowledge that his [commercial driver's license] was suspended four days after he began work for [Federal Fruit] warrants a new trial on damages with respect to Miller's retaliation claim against [Federal Fruit].  First, the evidence about Miller's notice that his license would be suspended and about Miller's criminal convictions was not discovered until after trial.  And although the evidence was technically available to Defendants, the Court finds that Defendants did not lack diligence because they relied on Miller's pretrial representations. . . . The new evidence about Miller's conviction for criminal simulation is also sufficient to meet the requirements for a new trial under Rule 60(b)(2) because the evidence is not only relevant to Miller's credibility but the evidence is also relevant to rebut Miller's evidence that he suffered emotional distress as a result of being fired by [Federal Fruit]. . . . In conclusion, the jury was given an incomplete picture on which to find that Miller suffered emotional distress damages.  The evidence about Miller's conviction for criminal simulation and the evidence that Miller received a warning letter prior to his employment with [Federal Fruit] that his [commercial driver's license] was scheduled to be suspended could have affected the jury's award of compensatory damages for emotional pain and

mental anguish. Evidence that in 1995 and 1996 Miller claimed to be single, but in 2012 Miller claimed to have been married for 27 years, whether by common law or statutorily, is important evidence regarding both Miller's credibility and Miller's claim that after he was fired from [Federal Fruit] he experienced emotional distress because he was unable to support his wife and children. Even the evidence that Miller had an obligation for child support, either to his wife or to the state, might be admissible at a new trial if Miller's marriage status is not fully explained." *Id.* at 81-83 (citation omitted).

## II. Analysis

Defendants seek the following additional discovery: 1) a deposition of Mr. Perkins regarding the "alleged 'nigger' grievance;" 2) one or more depositions of Union representatives regarding the "alleged 'nigger' grievance;" 3) unspecified discovery from Plaintiffs' counsel about the "alleged 'nigger' grievance," Mr. Miller's marital status, criminal record and commercial driver's license; 4) unspecified discovery from Plaintiffs' former attorney about the "recanted EEOC charge allegations;" 5) subpoena duces tecum to GT Express and deposition of GT Express about Mr. Perkins' "dates and scope of employment;" 6) deposition of Plaintiffs' economic expert (if proffered for new trial); 7) deposition of Mr. Miller about his alleged marriage, child support obligations, emotional distress claims, and knowledge of driving record; 8) subpoena and/or request for production of documents about Mr. Miller's child support obligations and knowledge of driving record; and 9) deposition of Mr. Miller's alleged wife. *Motion* [#210] at 1-7.

Plaintiffs argue that discovery should be limited to: 1) a one-hour deposition of Mr. Perkins about the "alleged 'nigger' grievance;" 2) leave for Dr. Pacey to amend her report on damages and a two-hour deposition of Dr. Pacey about the amended report; and 3) a subpoena duces tecum to GT Express relating to Mr. Perkins' dates and scope of employment. *Response* [#214] at 1-5. Plaintiffs argue that depositions of their present and

5

former attorneys would violate the attorney-client privilege, and that depositions of Mr. Miller and/or his wife would violate the spousal privilege. *Id.* at 2-4. They assert that discovery into Mr. Miller's marriage should not be permitted "in order to protect the Miller family from unnecessary annoyance and embarrassment" and that information regarding his marriage, commercial driver's license and child support obligations is not relevant. *Id.* at 4-5.

The language of the District Judge's Order granting a new trial as to certain claims and issues makes clear that evidence regarding Mr. Perkins' "alleged 'nigger' grievance" **(topic A)**, the content, drafting and execution of Mr. Perkins' EEOC charge of discrimination **(topic B)**, Mr. Perkins' employment with GT Express **(topic C)**, Dr. Pacey's expert opinion about Mr. Perkins' wage and benefit losses **(topic D)**, Mr. Miller's conviction of a crime involving fraud **(topic E)**, Mr. Miller's alleged marriage **(topic F)**, Mr. Miller's child support obligations **(topic G)** and the suspension of Mr. Miller's commercial driver's license **(topic H)** is not only relevant, but important, to the second trial.

In addition, the Court finds that Plaintiffs' objection to the deposition of their former attorney, Paula Greisen, regarding Mr. Perkins' EEOC charge of discrimination lacks merit. The Colorado courts have consistently held that

> the attorney-client privilege is not an absolute privilege and may be waived by the client. Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure.

*People v. Sickich*, 935 P.2d 70, 73 (Colo. App. 1996). As noted by the Colorado Supreme Court, "by placing in issue a confidential communication going directly to the claim or

6

defense, a party impliedly waives the attorney-client privilege with respect to that communication." *Mountain States Tel. & Tel. Co. v. DiFede,* 780 P.2d 533, 543 (Colo. 1989). The rationale for implied "at-issue" waiver of the attorney-client privilege is based on the fact that the party himself places an allegedly privileged communication at issue in the litigation, "because any other rule would enable the client to use as a sword the protection which is awarded him as a shield." *People v. Madera*, 112 P. 3d 688, 691 (Colo. 2005). A three-part test is used to determine whether there has been an implied waiver of the attorney-client privilege by putting a matter in issue:

> [I]mplied waiver of a privilege is appropriate where the following factors are present: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*DiFede,* 780 P.2d at 543-44; *accord Madera*, 112 P.3d at 691-92. Finally, in analyzing whether an implied waiver has occurred, a court must determine:

> (1) as precisely as possible, the information sought to be discovered; (2) whether the information is relevant to a matter at issue; (3) whether the information could be obtained by any other means; (4) whether the information is privileged; (5) if it is privileged, whether the privilege has been waived; (6) if it is privileged, but has been waived, either explicitly or impliedly, the scope of the waiver.

*Madera*, 112 P. 3d at 691.

Application of the *Madera* and *DiFede* tests results in the conclusion that Mr. Perkins impliedly waived his attorney-client privilege regarding communications with Ms. Greisen about the EEOC charge of discrimination. Under the six-part *Madera* test, the information sought to be discovered by Defendants relates to what Mr. Perkins told Ms. Greisen about his alleged protected activities, whether he mentioned the "alleged 'nigger' grievance," who

drafted the charge of discrimination, and whether Mr. Perkins read it or was aware of its contents before signing it. *Motion* [#210] at 1-6. This information is relevant to Mr. Perkins' claim for retaliatory discharge against Mr. Martelli, which will be retried at the second trial, and to Mr. Perkins' credibility. The information sought cannot be obtained by any other means. Although the information is privileged, the privilege has been impliedly waived by Mr. Perkins' filing of the lawsuit as well as his testimony under oath that the EEOC charge was inaccurate, was drafted by his attorney, and that he did not read it before signing it, which put into issue his communications with Ms. Greisen relating to the charge. Moreover, application of the privilege would deny Defendants access to information vital to their defense of the retaliatory discharge claim. The scope of the waiver relates to all information communicated by Mr. Perkins to Ms. Greisen regarding his alleged protected activities, communications between Ms. Greisen and Mr. Perkins regarding drafting and the content of the EEOC charge, information regarding Mr. Perkins' knowledge of the content of the EEOC charge prior to its execution by him, and who drafted the EEOC charge. *Madera, supra; DiFede, supra.*

The Court further finds that the spousal privilege does not apply to information about Mr. Miller's marital status or child support obligations, as that information does not implicate examination of Mr. Miller "for or against his wife" or "any communications made by one to the other during the marriage." Colo. Rev. Stat. § 13-90-107(1)(a)(I); *see also People v. Inman*, 950 P.2d 640, 642 (Colo. App. 1997) ("[I]f there is no valid marriage, the privilege against adverse spousal testimony does not apply." (Internal quotation marks omitted)). It is therefore clear that discovery should be permitted on each of these topics. Accordingly, the Motion [#210] is **GRANTED**.

In order to protect against unnecessary expense and delay and to discourage discovery abuses, *see* Fed. R. Civ. Pro. 26(c), the Court orders the following **regarding the *methods* Defendants may use to obtain discovery on the topics set forth above.** Defendants may not use these methods to obtain discovery on any topics other than topics (A) through (H) above. Accordingly, **IT IS ORDERED** as follows:

1. Defendants may take no more than two hours of deposition testimony from Mr. Perkins.
2. Defendants may take no more than three hours of deposition testimony from Mr. Miller.
3. Defendants may take no more than one hour of deposition testimony from a Union representative or representatives.
4. Defendants may take no more than one hour of deposition testimony from Paula Griesen, Esq., on a date and at a time and location mutually convenient to all counsel and the parties, but no later than **March 31, 2014**.
5. Defendants may issue subpoenas duces tecums to GT Express, any third party responsible for maintenance and/or in possession of child support records regarding Mr. Miller, and any third party responsible for maintenance and/or in possession of records relating to Mr. Miller's commercial driver's license.
6. Defendants may propound up to ten interrogatories and/or requests for production of documents to Plaintiffs regarding topics (A) through (H).
7. Plaintiffs shall provide a supplemental report of Dr. Pacey, in accordance with

Fed. R. Civ. P. 26(a)(2), on or before **February 28, 2014.** Defendants may take no more than two hours of deposition testimony from Dr. Pacey about her supplemental report.

**IT IS FURTHER ORDERED** that the discovery permitted by this Order shall be completed **on or before April 15, 2014.** The parties shall follow my discovery dispute procedures regarding any disputes relating to the permitted discovery.

Dated: January 6, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge