**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**RICHARD PERKINS and
RICHARD MILLER,**

    **Plaintiffs,**

vs.                                                                **No. 11 CV 542 JAP/KBM**

**FEDERAL FRUIT & PRODUCE COMPANY, INC. and
MICHAEL MARTELLI,**

    **Defendants.**

**ORDER DENYING MOTION FOR SANCTIONS
AS TO ATTORNEY PAULA GREISEN**

        In Defendants' MOTION FOR SANCTIONS (Doc. No. 260) (Motion), Federal Fruit & Produce Company, Inc. (FFP) and Michael Martelli (Martelli) ask the Court to award sanctions under Fed. R. Civ. P. 37 and 45(e) against: (1) Plaintiff Richard Perkins (Perkins), (2) the law firm that represents Perkins in this case, Elkus, Sisson & Rosenstein (ESR), (3) Perkins' former counsel, Paula Greisen (Greisen), (4) Teamsters Local Union No. 455 (Union), (5) the Union's counsel, Linda Cote (Cote), and (6) Jesse Medina (Medina), the Union's business representative.[1] This Order concerns only the Defendants' request for sanctions against Greisen. On September 30, 2014, the Court will hold an evidentiary hearing on the Motion against

---

[1] This ruling is a denial of the Motion in part only as to attorney Paula Greisen. In ruling on the Motion the Court considered the arguments and exhibits in GREISEN'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS (Doc. No. 265). Other responses were reviewed by the Court, and where necessary, they were used in deciding Defendants' claim against Greisen. *See* NON-PARTYS TEAMSTERS LOCAL UNION NO. 455, LINDA COTE AND JESSE MEDINA'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS (Doc. No. 267); and PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS (Doc. No. 268).

Perkins, ESR, the Union, Cote, and Medina. Greisen has agreed to appear as a witness at the evidentiary hearing.

Two documents are the subject of the Motion as it concerns Greisen. The first document is a Union grievance allegedly filed by Perkins but allegedly lost by the Union. In the grievance, Perkins complained about an incident at FFP on March 11, 2009 during which Defendant Martelli called Perkins a "nigger." The grievance will be referred to here as the "Lost Grievance." At trial, Perkins claimed to have prepared and filed the Lost Grievance with Union representative Medina, but Medina admitted he cannot find it.[2] There is no evidence that the Lost Grievance was ever in Greisen's possession. The second document is a letter dated April 22, 2010 from Cote to Greisen. The April 22, 2010 letter, which Defendants failed to receive during pre-trial discovery, is the primary concern of this Order.

## I. BACKGROUND

A. <u>Greisen's Representation of Perkins.</u>

Greisen represented Perkins in filing an EEOC Charge against FFP and Martelli alleging that Perkins was discharged from employment at FFP for racially discriminatory reasons and in retaliation for complaining about race discrimination. Perkins admitted at trial he did not sign his EEOC Charge, but he authorized Greisen to sign it on his behalf. (Tr. 1082:5-11.) It was signed and verified by Greisen and filed on November 5, 2009. On October 15, 2010, the law firm of Elkus & Sisson, P.C., now ESR, began to represent Perkins. On November 17, 2010, Greisen withdrew from representation of Perkins in the EEOC proceeding. On December 13, 2010, Reid Elkus, on behalf of ESR, filed an entry of appearance for Perkins in the EEOC proceeding. On March 4, 2011 the Complaint initiating this lawsuit was filed by ESR on behalf of Plaintiffs

---

[2] *See* Trial Tr. 376:1-377:7.

Perkins and Miller, and on March 24, 2011, an Amended Complaint was filed. (*See* Doc. Nos. 1 and 7.)

      B. <u>Events Related to Trial of this Case.</u>

In May 2011 during pre-trial discovery, Defendants served Requests for Production on Perkins asking for (1) all notes, memos, correspondence, or other documents "which record your (or any other person's) reaction or response to actions taken, or not taken, by Federal Fruit. . . ." (Mot. Ex. B. at pp. 5-6.) Perkins submitted only handwritten notes. (Mot. Ex. C.) Defendants asked for any and all statements written or recorded, sworn or unsworn, relating to the events alleged in Perkins' Amended Complaint or "related in any way to your employment at, discharge from, or resignation from Federal Fruit, in possession of you or your attorneys and taken from any person, including but not limited to statements made by you to Union representatives." (Mot. Ex. B at p. 6.) In response, Perkins stated, "no written or recorded statements were taken other than those identified in Plaintiff's 26(a)(1) Disclosures, which have been provided previously, including the grievances filed . . . and the Arbitration Transcript." (Mot. Ex. C. at p. 6.)

Defendants further requested from Perkins "documents related to your communications with your Union representatives including but not limited to email communications, concerning grievances filed by you or on your behalf at Federal Fruit." (Mot. Ex. B. at pp. 6-7.) Perkins responded that he had no such documents, "other than communications between his attorney and Cote." (Mot. Ex. C at p. 7.) Defendants asked Perkins for all documents and communications with your Union representatives, including but not limited to email communications, concerning allegations of race discrimination." (Mot. Ex. B. at p. 7.) Perkins identified only communications between his attorney and Cote.  (Mot. Ex. C. at p. 7.)

On August 1, 2011, Defendants served a subpoena on the Union requesting, "[a]ll files notes, recordings, emails, and documents concerning Richard Perkins." (Mot. Ex. A.) The Union claimed attorney-client privilege and work product protection as to communications (1) between its counsel Cote and Medina, (2) between Union counsel Rhett Dacus and Medina, (3) between Cote and NLRB attorney Isabel Saveland, and (4) between Cote and Greisen. Defendants filed DEFENDANTS' MOTION TO COMPEL REPONSES TO DEFENDANTS' REQUESTS FOR PRODUCTION PURSUANT TO DEFENDANTS' SUBPOENA DUCES TECUM (Doc. No. 42).

On December 30, 2011, United States Magistrate Judge Kristen L. Mix granted Defendants' Motion to Compel and ordered the Union to produce the requested documents by January 6, 2012. Judge Mix determined that when the Union and Medina disclosed the communications between the Union's attorneys and Perkins, they waived their work product privilege with respect to those communications. *See* ORDER GRANTING MOTION TO COMPEL (Doc. No. 56) at p. 8. Judge Mix ordered all communications between Medina and the Union's attorneys produced. Judge Mix also found that the Union waived its privilege with respect to communications among the Union's attorney Cote, Greisen, and the NLRB attorney Saveland. (*Id.*)

In response to Judge Mix's order, the Union produced more than 1200 pages of documents, but the Lost Grievance and the April 22, 2010 letter were not included in that document production. The Union did not disclose any information about the Lost Grievance.

At trial in May 2012, Perkins and Medina testified that Perkins prepared and filed the Lost Grievance, which Perkins described as a separate grievance complaining about being called a "nigger" on March 11, 2009 by Martelli. Perkins stated he did not know what happened to the

4

Lost Grievance. Union representative Medina testified that Perkins prepared the Lost Grievance, but Medina did not know what happened to it thereafter. (Tr. 1019:15-1020:12 (Perkins); 376:1-5; 377:1-7 (Medina)). The jury ruled in favor of Perkins on all of his claims against FFP and Martelli and awarded Perkins damages for lost wages, emotional distress, and punitive damages. Based on Perkins' surprise testimony about the Lost Grievance, the Court, *inter alia*, ordered a new trial under Fed. R. Civ. P. 60(b)(3) on Perkins' retaliation claim against Martelli. (Doc. No. 194 at pp. 32-51.)

    C.  Post-Trial Discovery.

After the decision ordering a new trial, Defendants asked Perkins to supplement his discovery responses. Perkins provided supplemental responses on March 28, 2014. Mot. Ex. D. Perkins did not mention or provide a copy of the Lost Grievance. In addition to seeking discovery related to the existence of and circumstances surrounding the Lost Grievance, Defendants also sought to discover information related to the preparation of Perkins' EEOC Charge, which was prepared and filed by Greisen, as Perkins' attorney. Defendants were allowed to delve into the circumstances surrounding the preparation of Perkins EEOC Charge because during Perkins' trial testimony, Perkins refuted many of the allegations in the Charge. Discovery disputes arose, and the Court referred all post-trial discovery matters to Magistrate Judge Mix. Judge Mix allowed Defendants a one-hour deposition of Greisen and a one-hour deposition of Union representative Medina. (*See* Doc. No. 228 at p. 9.)

    1. *Medina's Post-Trial Deposition*

Medina testified that his normal practice was to fax grievances to Federal Fruit. (Mot. Ex. O at 8:17-20.) Medina testified that he kept all grievances in a file drawer and on his desk. (*Id.* at 8:24-9:10; 10:18-23.)  Medina had no specific memory of faxing the Lost Grievance to FFP, and

even after many attempts to locate it, he was unable to find it or the fax transmission sheet that would have been printed at the time Medina faxed this grievance to FFP. (*Id.* at 8:21-23; 25:13-26:2.)  Medina testified that the Union would consider a grievance concerning a racial epithet to be very serious and he had no reason to believe the Union would fail to pursue this type of grievance. (*Id.* at 22:4-11.)

### 2. *Greisen's Post-Trial Deposition*

Defendants sought discovery of Greisen's file on Perkins. On March 7, 2014, Judge Mix partially quashed Defendants' subpoena duces tecum of Greisen's file on Perkins. (Minute Order Doc. No. 235.) But, Judge Mix ordered Greisen to produce any documents she reviewed prior to her deposition. (*Id.*) On March 12, 2014, Greisen testified in her deposition that she did not review her file and could not recall important details of documents she had received or what information she gathered during her representation of Perkins. (Mot. Ex. P.) Greisen also testified that although Perkins told her about the Lost Grievance, she never received a copy of it. (*Id.*)

After the initial one-hour deposition of Greisen, Defendants moved a second time for document discovery from Greisen. (*See* ORDER Doc. No. 244.) Judge Mix ordered Greisen to appear and testify at another one-hour deposition. (*Id.* at p. 7.) Judge Mix ordered Greisen to review her file related to Perkins prior to the second deposition and to produce all documents related to certain topics.  Greisen was ordered to provide a privilege log with respect to withheld documents. (*Id.* at pp. 7-8.) Judge Mix also commented that Greisen had used Judge Mix's wording in the previous order (Doc. No. 228) to obstruct the discovery of any documents in Greisen's file by not reviewing them before her first deposition. *Id.*

Prior to her second deposition, Greisen produced 127 pages of documents. Out of those documents, two are important to this Motion because they were not produced prior to the first trial. The first document was an EEOC draft charge regarding Perkins' claim of discrimination against FFP which purported to describe relevant events that occurred from February 28, 2009 to March 15, 2009. (Mot. Ex. E.) The EEOC draft charge did not mention the Lost Grievance. (*Id.*) Greisen testified that she did not think her office drafted this document. (Mot. Ex. P. at 62:13-63:4.)

The second important document out of the 127 pages was the April 22, 2010 letter from Cote to Greisen, which indicates a "cc" to Perkins and a "cc" the Union. (Mot. Ex. F.) The April 22, 2010 letter was in response to an April 5, 2010 letter from Greisen, produced pre-trial, in which Greisen asked Cote to provide "a complete listing of all of the grievances filed on Mr. Perkins' behalf." The April 22, 2010 letter listed "Mr. Perkins' grievances, in chronological order by infraction alleged." (Mot. Ex. F.) The second grievance listed is described as "Grievance #111014 – manager used the term 'nigger'" *Id.* In fact, Grievance #111014 does not contain the word "nigger" and instead complains only that Perkins was "wrongly discipline[d]." (Mot. Ex. H.)

In a subsequent letter dated April 27, 2010 from Cote to Greisen, produced to Defendants pretrial, Cote corrects her description of Grievance 111014: "[o]n closer inspection, I note that grievance number 111014 is not EEO related, as it involved discipline for 'standing around doing nothing,' or something like; the term 'nigger' was used later in comment by a supervisor." (Mot. Ex. I.) Defendants assert that the April 22, 2010 letter was a crucial document in a string of correspondence regarding Perkins' grievances. According to Defendants, the April 22, 2010 letter, along with other evidence, proves that the Lost Grievance never existed. The April 22,

7

2010 letter was crucial to Defendants' preparation and presentation of their primary defense, that Martelli never called Perkins a "nigger" and that no racial discrimination or retaliation against Perkins occurred at FFP. More importantly, the Lost Grievance was an important protected activity that supported Perkins' claim against Martelli for retaliatory discharge. Defendants contend that the damage from this withheld document and surprise testimony warrants the imposition of sanctions and even an order vacating Perkins' entire judgment against FFP and Martelli. In that regard, Defendants seek to hold to account whoever is responsible for failing to disclose the April 22, 2010 letter. Be that as it may, the Court believes that Defendants have failed to come forward with enough evidence that Greisen is that responsible person.

In her second deposition, Greisen testified that when ESR began its representation of Perkins in this litigation, her "instructions would have been to copy and send her entire file" to ESR. (Mot. Ex. P at 71:25-72:6.) Greisen testified that she was unaware of "any reason why the April 22 letter would not have been sent to ESR." (*Id.* at 72:7-9.) After Defendants notified Cote of the existence of the letter in post-trial discovery, Cote produced an unsigned copy of the letter. (Mot. Exs. J and K.) On July 27, 2014, Cote produced twelve additional emails previously undisclosed, one of which had the April 22, 2010 letter attached. Cote called the Union's failure to produce the April 22, 2010 letter "an oversight." (Mot. Ex. L.)[3]

---

[3] Defendants assert that Cote made various representations to Defendants' counsel, Ms. Keimig, about Cote's reaction to the subpoena issued to the Union in 2011. This included Cote's statement that Cote did not search her own files for documents concerning Perkins because she thought the subpoena needed to be issued to Cote personally to obtain any Union files from her office. Defendants contend Cote stated that she believed a personal subpoena was necessary to order her to produce even the documents from her file written on the Union's behalf and maintained in the Union's file at Cote's office. (Mot. at pp. 8-9.) Defendants assert that Cote further explained she did not oversee Medina's search and production of documents other than to tell him to produce "everything." *Id.* Defendants represent that after Defendants notified ESR that they were concerned about the failure to produce the April 22, 2010 letter from Cote to Greisen, a representative from ESR conferred with Cote about Perkins' receipt and knowledge of

II.  DISCUSSION

Under the Colorado Rules of Professional Conduct when a lawyer ends a representation of a client, the lawyer must ". . . take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred." Rules of Prof.Cond. Rule 1.16 (d). Failure to turn over a client's file to new counsel in a timely manner, violates this rule. *People v. Crews*, 901 P.2d 472 (Colo. 1995).  The fact that Defendants did not receive the April 22, 2010 letter in pretrial discovery does not prove that Greisen failed to turn over the April 22, 2010 letter to ESR. Therefore, under the circumstances, it does not appear that Greisen violated Rule 1.16 (d).

Greisen did not represent Perkins in this lawsuit; therefore, she had no duty under Fed. R. Civ. P. 26 (a) to provide pre-trial disclosure of documents in her possession regarding the subject matter of this action. Under Rule 45(g), a non-party can be held in contempt for failure without adequate excuse to obey a subpoena or an order relating to a subpoena. In 2014, Greisen was subpoenaed for a deposition, and she appeared for a deposition. A subpoena duces tecum issued for all documents related to her representation of Perkins was partially quashed by Magistrate Judge Mix. (*See* Minute Order (Doc. No. 235)). Greisen did not follow the spirit of Judge Mix's ruling partially quashing the subpoena duces tecum, and this caused the Defendants to have to seek further discovery and take a second deposition of Greisen. For this reason, the Court will deny Greisen's request for an award of her attorney fees incurred in responding to the Motion for

---

the April 22, 2010 letter. (*Id.* at p. 9.) Defendants imply that Cote and ESR should have included one of their representatives in this conference. The Court hopes that this and other circumstances outlined in the Motion will be sorted out at the evidentiary hearing on the Motion.

Sanctions. However, the Court will not impose sanctions on Greisen. There is no evidence that she "failed without adequate excuse to obey" the subpoena duces tecum or the order related to it. Therefore, sanctions under Rule 45(g) are inappropriate.

Defendants further contend that Greisen and the others who are the subjects of this Motion are liable for sanctions due to spoliation of evidence. Spoliation is the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Asher Assocs. v. Baker Hughes Oilfield Operations*, No. 07 CV 1379, 2009 WL 1328483, * 5 (D. Colo. May 12, 2009). Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Public Service Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2001). But if the aggrieved party seeks a remedy for spoliation, it must also prove bad faith. "Mere negligence in losing or destroying records is not enough . . . ." *Turner*, 563 F.3d at 1149 (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 2007)).

In this instance, there is no evidence that Griesen failed to preserve the April 22, 2010 letter. In fact, she produced the April 22, 2010 letter, albeit in 2014, showing that it had not been destroyed, altered, or misplaced. *Id.* As for the Lost Grievance, if it existed, it was mishandled by the Union, Cote, Medina, Perkins, and/or ESR. Greisen testified she heard about, but never saw, the grievance, and the Court sees no evidence that ties Greisen to the mishandling, destruction, or misplacement of the Lost Grievance.

IT IS ORDERED that the MOTION FOR SANCTIONS (Doc. No. 260) is denied in part as to Paula Greisen. The other parties and non-parties that are the subject of the Motion will

appear at the evidentiary hearing on September 30, 2014 at 9:00 a.m., United States Courthouse, Courtroom #702, Denver, Colorado.

Dated this 5th day of September, 2014.

_____
SENIOR UNITED STATES DISTRICT JUDGE